MIDLAND VALLEY RAILROAD COMPANY *v.* MORAN BOLT & NUT

MANUFACTURING COMPANY.

: Opinion delivered November 5, 1906.

1. RAILROAD—MECHANICS' LIEN—MATERIALS FURNISHED TO SUBCONTRACTOR.—Kirby's Digest, § 6661, providing for a mechanics' lien on a railroad, gives the lien to any person who furnishes material which enters into the construction, equipment or repair of the railroad, whether furnished to the contractor or subcontractor, or directly to the railroad company. (Page 402.)

2. CONFLICT OF LAWS—LEX CONTRACTUS.—A contract is to be construed with reference to the law of the place of performance, and not to the law of the place where it originated. (Page 403.)

3. SAME—LEX LOCI REI SITAE.—Liens on real estate and on immovables are governed by the law of the situs of the thing upon which the lien is sought to be enforced. (Page 403.)

4. RAILROAD—CONSTRUCTION OF MECHANICS' LIEN.—Liens upon the roadbed, buildings and equipment of a railroad are classified as liens upon immovables, although the lien may also extend to personal property and franchise, for the road must be considered as an entirety. (Page 404.)

5. SAME—MECHANICS' LIEN NOT EXTRATERRITORIAL.—Where the roadbed of a railroad company extended from this State into another State or a Territory, a lien will not be enforced in this State for materials furnished in constructing the road outside of the State, though furnished under the same contract whereby materials were furnished for use in constructing the road within the State, as the rule of treating the railroad as an entirety extends only to the roadbed and easements within the State. (Page 404.)

Appeal from Sebastian Circuit Court; *Styles T. Rowe,* Judge; reversed.

STATEMENT OF FACTS.

The Moran Bolt & Nut Manufacturing Company, a Missouri corporation, sued to obtain and enforce a lien for material furnished to Mike Kelly, a subcontractor, in the construction of the Midland Valley Railroad Company, making Kelly, his principal, the Cherokee Construction Company, and the railroad company parties defendant.

The complaint alleged that defendant railroad company was engaged in constructing its railroad through a part of Sebastian County, Arkansas, to Stigler, Indian Territory; that it let the contract to build its railroad to defendant construction company, which sublet the contract for building the bridges along the road to defendant Kelly; that Kelly entered into the construction of said bridges, and, at the request of Kelly, the plaintiff sold and shipped to him several carloads of bolts and nuts and bridge material, to be used by Kelly in the construction of the bridges; that the material was received by Kelly and used by him in building and constructing said bridges; that the amount which Kelly promised to pay for said material was $2,240.53, and such sum is due upon open account for material furnished, and Kelly has failed to pay it, together with the interest at six per cent. per annum from the 15th day of March, 1904; that plaintiff has made repeated demands upon the Midland Valley Railroad Company for the payment of said sum, but it has wholly failed and refused to pay same; that the cause of action accrued within one year from the date of filing of the complaint, and for the payment of said sum plaintiff had a lien upon the Midland Valley Railroad Company's roadbed, right of way and franchises.

The defendant railroad and construction companies denied the allegations of the complaint as to the materials alleged having been furnished to Kelly or as to their having been used by him in the construction of the railroad.

Uncontradicted testimony showed that the materials were furnished to Kelly by plaintiff, and that they were employed in constructing the railroad. Kelly testified that a little more than half of the material shipped to him was used in the work in the Indian Territory.

The court found the facts as follows:

"The Midland Valley Railroad Company was engaged in building its line of railroad from Greenwood, Arkansas, to Bokoshe, I. T., during the years 1903 and 1904, and let the contract for building the same to the Cherokee Construction Company, and said construction company sublet to Mike Kelly the contract to build the bridges on said railroad; defendant Mike Kelly bought bolts and nuts and bridge material, for use in the construction of said bridges, from the plaintiff, and said bolts and nuts were used by him in building the said bridges on said railroad; and the sum owing by him, together with interest, amounts to $2,354.41. About half of the material bought and used in the construction of the road was used in Arkansas, and the other half bought and used entered into the construction of bridges in the Indian Territory."

The court rendered judgment against Kelly for the amount sued for, but rendered no judgment against the construction company. It rendered judgment also for the full amount thereof against the railroad company, and decreed that such judgment should be a lien upon all that part of the railroad situated in the State, together with its roadbed, right of way, buildings, equipment, income, franchises and all other appurtenances, but not upon the railroad outside of the State.

Defendant railroad company has appealed.

*H. M. Armistead,* for appellant; *J. W. McCloud,* of counsel.

1. The law of this State confers no lien in favor of material men who furnish materials to subcontractors for use in the construction of railroads. Act March 19, 1887, § 1; 59 Ark. 81; 65 Ark. 183; Kirby's Digest, § § 6661-3 (act March 31, 1899); 85 Ill. 531; 54 Fed. 723; 70 Ark. 262; 71 Ark. 126.

2. There is no railroad lien law in force in the Indian Territory. The act of Congress extending certain laws of the State of Arkansas over the Indian Territory did not include the railroad lien act of 1887. 26 U. S. Stat. at Large, chap. 182, p. 81. If appellee has a lien for materials furnished, it should be limited in its recovery to that portion of its unpaid account which is for materials shown to have been used in Arkansas. 78 N. Y. 30; 37 Ala. 85; 73 Am. Dec. 431.

*Winchester & Martin,* for appellee; *Kinealy & Kinealy,* of counsel.

1. This action is brought under § 6661, Kirby's Digest, which this court has construed as giving a lien to any person who furnishes material which enters into the construction, equipment or repair of a railroad, etc. 74 Ark. 533. See, also, 71 Ark. 132.

2. The proof shows that this was an Arkansas contract. It must be construed and determined by the laws of this State. 22 Am. & Eng. Enc. Law, 1340; 71 Ga. 628; 43 Ark. 353.

If it should be construed as a Missouri contract, under the law of that State it is provided that the lien shall attach to the roadbed, etc., from the time the materials are furnished or delivered, and it is not essential that they be incorporated in the construction of the road. 54 Fed. 598. See, also, 28 Neb. 39; 45 Minn. 13.

3. The lien for materials furnished, and which entered into the construction of the roads, attaches to it as a whole, and not to the particular part of the road which they entered into. 11 L. R. A. 744; 30 Fed. 334. And appellee can enforce a lien against the property of appellant in this State, under the facts of this case. 72 Mo. 664.

Hill, C. J. 1. The appellant claims that there is no lien under the railroad lien act in favor of a materialman who furnishes a subcontractor. In *St. Louis, I. M. & So. Ry. Co.* v. *Love,* 74 Ark. 528, the court was called upon to construe this statute, and therein held that the statute "gives a lien * * * (3) to any person who furnishes material which enters into the construction, equipment or repair of the railroad, whether furnished to the contractor or subcontractor, or directly to the railroad company." It is pointed out that this exact question was not before the court in the Love case, and that is true; but in construing the statute relating to the question then before the court the whole statute had to be analyzed. The exact question above decided is now before the court, and for the reasons given in the Love case the construction there placed upon it is approved.

2. Part of the material went into the construction of appellant's line of railroad in Arkansas and part of it in the Indian

Territory, and the whole debt was enforced as a lien against so much of appellant's road as lies within this State.

There is no law in the Indian Territory giving liens on railroads for material used in construction. In fact, no railroad lien law. Appellee seeks to sustain the judgment on the theory that the contract was an Arkansas contract, and to be construed and determined by the laws of Arkansas. The contract is imbedded in correspondence between Kelly, the subcontractor, and appellee company. Kelly wrote from different points in Arkansas; appellee wrote from its office in St. Louis, Mo. "The place where an obligation originates is often accidental; is remote, sometimes receding from spot to spot, as we search for it; and is extrinsic to the essence of the engagement, and to its subsequent development and efficiency." 2 Wharton, Conflict of Laws, § 398. "It is different, however, with the place of performance, which enters into the vitals of the obligation, so far as concerns its fulfillment." *Id.,* § 399.

In this case there was an express agreement that part of the material should be delivered at Shady Point, I. T., by appellee to Kelly for use in construction of appellant's road in the Indian Territory, and part for like purpose for the road in Arkansas at Montreal, Arkansas. Notwithstanding there is but one contract, when it is to be performed in different jurisdictions, the law of each jurisdiction enters into the essence of the performance in the respective jurisdictions. 2 Wharton on Conflict of Laws, § 815a. Therefore the law of this contract was in Arkansas for so much of it as was to be performed in Arkansas, and in the Indian Territory for so much of it as was to be performed in the Indian Territory. Wharton, *supra*; Story on Conflict of Laws, § 280, and note.

Liens on real estate and on immovables are governed by the law of the situs of the thing upon which the lien is sought to be enforced. 1 Wharton on Conflict of Laws, § 291.

The fact that liens are provided upon the roadbed, buildings, and equipment of a railroad necessarily classifies such liens as upon immovables, although the lien may also extend to personal property and the franchise, for the road must be considered as an entirety. 1 Wharton, Conflict of Laws, § 291; Story on Conflict of Laws, § 447; 2 Jones on Liens, § 1619.

Therefore the law of the Indian Territory would govern as to lien for the material which went into the roadbed in the Indian Territory, and, being no lien law there, there is no ground for enforcing a lien in Arkansas, even if such law had extraterritorial effect.

In Missouri a lien was declared on a railroad in that State for material entering into a bridge in Kansas (*St. Louis Bridge, etc., Co. v. Memphis, etc., Rd. Co.,* 72 Mo. 664) ; but that decision does not square with the elemental principles involved in the subject. In New York the same question was before the Court of Appeals in regard to a lien sought to be enforced on real estate for material furnished in the construction of an engine used in a starch factory, which material was furnished in Connecticut. The court said: "Such a lien did not exist at common law. It is no part of the contract to be enforced where that can be enforced. It is purely the creature of the statute. The statute has no extraterritorial force. It was intended for the protection of those who performed labor or furnished materials within this State. When this engine was brought into this State and put into this factory, it belonged to this defendant. The plaintiff did not furnish any material in this State. It can not, therefore, have the benefit of the statute." *Birmingham Iron Foundry* v. *Glen Cove Starch Mfg. Co.,* 78 N. Y. 30.

The above reasoning is a complete answer to the argument that the *lex fori* should govern and the Arkansas lien statute be invoked for material furnished without the State where suit is brought within the State. The case at bar is much stronger against applying such statute than the New York case, because here the materials went into an easement in real estate in another jurisdiction, and in the New York case the subject-matter of the lien was brought into New York. It is argued that, because the railroad must be treated as an entirety and not sold in parcels in the enforcement of liens against it, the whole debt could be enforced in this suit. The rule of treating the railroad as an entirety extends only to the roadbed and easements within the State. 2 Jones on Liens, § 1619; 1 Wharton on Conflict of Laws, § 292½; *Ireland* v. *A., T. & S. F. Ry.,* 79 Mo. 572; *Knapp* v. *St. Louis, K. C. & N. Ry. Co.,* 74 Mo. 374; *Kansas City, P. & G. Ry. Co.* v. *Waterworks Imp. Dist.,* 68 Ark. 376.

There may be exceptions to this rule regarding the franchises, personal property, etc. 1 Wharton, Conflict of Laws, § § 289*a* and 292. Even in such instances, not pertinent to this inquiry, the lien laws of the other States are recognized, and sale of the entirety made subject to such local liens. *Hand* v. *S. & C. Rd. Co.,* 12 S. C. 314.

The judgment in this case was correct in form in fixing a lien on all the property of appellant railroad in the State of Arkansas, but it was erroneous in allowing that lien to be made up of material furnished and used in the construction of appellant's road in the Indian Territory; and for that error the cause is reversed and remanded.