CROWN CENTRAL PETROLEUM CORPORATION *v.* SPEER, CHANCELLOR.

4-7152                                              174 S. W. 2d 547

Opinion delivered October 18, 1943.

*Karl F. Steinmann* and *Davis & Allen*, for petitioner.

*Gaughan, McClellan & Gaughan, Claude Crumpler* and *T. O. Abbott*, for respondent.

GRIFFIN SMITH, Chief Justice. March 29, 1921, Harley R. Hinton and P. R. Mattocks assigned to White Oil Corporation an undivided half interest in 284½ acres of oil and gas leases they had purchased of D. E. and C. S. Armstrong, the consideration being $686,250.[1] A condition was that a final payment of $137,250 should be made when the working interest acquired by the White Corporation[2] amounted to 900,000 barrels. It was stated in an amendment to the complaint that in September, 1940, production reached this figure. Execution and delivery of the assignment occurred in Louisiana.

In 1923 the Corporation assigned its interests to United Central Oil Corporation. There was a condition that United should assume liabilities of White in respect of such properties. White Corporation was chartered under the laws of Delaware, and had complied with Arkansas laws permitting it to do a domestic business. In 1924 it withdrew from the State. United, by amendment to its Delaware charter in 1925, changed its name to Crown Central Petroleum Corporation.

---

[1] There was a cash payment of $274,500. The Company's note for an equal amount was subsequently paid.

[2] The so-called "working interest" was seven-eighths of total production from the half interest.

December 3, 1926, Crown Central assigned to The Texas Company the half interest White acquired from Hinton and Mattocks. September 20, 1937, Crown Central, then a Delaware Corporation, consolidated with Crown Central Corporation under a Maryland charter, and four days later the Maryland Corporation qualified to do business in Arkansas, naming John W. Newman as agent for service. December 27, 1940, it withdrew from Arkansas and cancelled Newman's authority to act as agent for service. Since that time it has not engaged in business here.

March 27, 1941, Mrs. Cornelia Mattocks, administratrix of the estate of P. R. Mattocks, (and others) [3] sued Crown Central and The Texas Company, asking judgment *in personam* against each for $137,350 and interest.

When the complaint was filed, Cornelia Mattocks, administratrix, was the only resident plaintiff, although North Central, a foreign corporation, was authorized to do business in Arkansas. It was alleged that E. H. Jones, M. F. Owens, and the estate of P. R. Mattocks, owned two sixty-fourths of the total sued for, amounting to $4,289.06.[4]

Petitioner concedes, for the purpose of testing the right to prohibition, that even though Crown Central of Maryland might be liable for the disputed obligation of Crown Central of Delaware, no act within this State to which the Maryland Corporation was a party gave rise to the indebtedness, nor does it exist by virtue of a transaction between any of the plaintiffs below and the defendant; but, says petitioner, if liability exists it is referable to the consolidation agreement and to Maryland laws providing that the corporation emerging from a consolidation be burdened with liabilities of the entity it acquired.[5]

---

[3] Other plaintiffs were E. Hammond Jones, M. F. Owens, B. B. Jones, H. S. Clarke, Margaret C. Hodges, B. M. Gant, and The North Central Texas Oil Company.

[4] The balance of $137,250, amounting to $132,960.94, was alleged to be due plaintiffs mentioned in the third footnote.

[5] Section 33½, Article 23, Maryland Code of the Public General Laws.

When the Delaware and Maryland Corporations consolidated, The Texas Company had for ten years been operating the Arkansas lease. Hence, says the petitioner, jurisdiction in a state court is in Maryland.

The Chancery Court at El Dorado refused to quash service. Returns showed that copies were delivered to C. G. Hall, Secretary of State; J. Oscar Humphrey, Auditor of State; and John W. Newman. Petitioner says that if the trial court did not err in refusing its motion to quash, it must look to The Texas Company for reimbursement; that by filing a cross-complaint asking affirmative relief from that Company, it would probably enter its appearance. To obviate such disadvantage, its contention in respect of invalid service is raised by petition for prohibition.

### OTHER FACTS—AND OPINION

Our Constitution (Art. 12, § 11) authorizes foreign corporations to do business in this State under such limitations and restrictions as may be prescribed by law.[6]

Every foreign corporation, as an incident to qualifying here, must file with the Secretary of State a copy of its charter or articles of incorporation. Its general office or place of business in Arkansas must be shown. At the same time it must name an agent upon whom process may be served. Pope's Digest, § 2247. If an agent is not designated, service upon the Auditor of State is sufficient. Pope's Digest, § 2250.[7]

The right of a state to enact non-discriminatory laws governing foreign corporations is not to be denied. *Simon* v. *Southern Railway Company*, 236 U. S. 115, 35 S. Ct. 255, 59 L. Ed. 492. But the power to require that an agent be named within the state upon whom process may be served, as Mr. Justice LAMAR said in the Simon case, must be construed as relating to business and trans-

[6] A condition is that no such corporation shall do any business in this state except while it maintains therein one or more known places of business and an authorized agent or agents in the same, upon whom process may be served. Contracts made in this state, or business done, shall be subject to the same regulations, limitations, and liabilities as pertain to domestic corporations.

[7] See second footnote to *The Vaccinol Products Corporation* v. *State, Use Phillips County*, 201 Ark. 1066, 148 S. W. 2d 1069.

actions within the jurisdiction of the state enacting the law.

Assuming, for the purpose of determining whether prohibition should issue on the instant application, that petitioner is indebted as alleged, the question is whether Hinton and Mattocks and the White Corporation contract was one for a breach of which the Chancery Court of Union County has jurisdiction.

In testifying relative to circumstances attending execution of the contract, Attorney H. C. Walker, Jr., of Shreveport, Louisiana, who represented White in promulgating the agreement, testified that ". . . we attempted to draw an instrument which we thought was good and enforcible as between the parties or good and enforcible as between the parties or any successors, and . . . the form we used (and which had been used by lawyers with respect to conveyance of Arkansas property before) we thought would be sufficient to convey the properties *and to bind the parties, according to its terms, in Arkansas.*" [8]

It is clear that Mr. Walker understood the parties were endeavoring to make an Arkansas contract. Hinton and Mattocks resided in El Dorado. The oil acreage —subject-matter of the lease—was in Union County, and no cause of action as to the contingent obligation of $137,250 could arise until wells on the property had produced 900,000 barrels. A Maryland state court would have been without power to enjoin The Texas Company from severing or disposing of oil upon which plaintiffs claim an equitable lien. Other examples of a want of jurisdiction in Maryland courts to administer relief in Arkansas might be mentioned. It is sufficient to say that nature of the transactions consummated and all circumstances, viewed in the light of rights conferred and liabilities created, strongly support contentions that no one intended to make a contract unenforcible in Arkansas.

In determining jurisdiction in respect of the enforcement of contractual rights, the fact that a writing was executed and delivery in a foreign state is only evi-

[8] Italics supplied.

dential. The general rule is that such a contract is to be construed with reference to the law of the place of performance, "and not of the law of the place where it was originated." *Sizer* v. *Midland Valley R. R. Co.,* 141 Ark. 369, 217 S. W. 6, citing *Midland Valley Rd. Co.* v. *Moran Bolt & Nut Manufacturing Co.,* 80 Ark. 399, 97 S. W. 679. 10 Ann. Cas. 372. Respondent urges as authority the decision in *Omaha Hardwood Co.* v. *J. H. Phipps Lumber Co.,* 135 F. 2d 3.[9] Petitioner concedes that the rule announced by Judge JOHNSEN would apply here had the suit been brought against White Oil Corporation. Since the record shows, *prima facie,* that rights plaintiffs seek to enforce against Crown Central had their inception in commitments made by White, the principle stated by Judge JOHNSEN does apply.[10]

It has been held that a mere common law appointment of an agent to receive service of process is without vitality after its revocation by a foreign corporation withdrawing from the State. See cases cited in *Corpus Juris Secundum,* "Corporations," vol. 20, § 1920, p. 171. It is there said: "On the other hand, where a foreign corporation comes into the state and does business therein and complies with the law by appointing an agent for the service of process, agreeing, either expressly or impliedly, that process may be served on the agent thus appointed, or on a particular public officer designated by statute, it cannot prevent actions against it arising out of its business in the state by withdrawing therefrom and attempting to revoke the authority to receive service of process conferred upon such agent or public officer, the appointment being irrevocable." [11]

In Fletcher's Cyclopedia of the Law of Private Corporations, vol. 18, § 8760, there is this statement: "A statutory agent's power to receive service cannot be revoked . . . to the prejudice of residents holding

---

[9] The opinion was handed down April 9, 1943, by Judge Harvey M. Johnsen of the Eighth Circuit. Argument was before Judges Johnsen, John B. Sanborn, and Walter G. Riddick, the latter of Little Rock.

[10] See *Sydeman Bros., Inc.* v. *Wofford,* 185 Ark. 775, 49 S. W. 2d 365; *Davis* v. *Kansas & Texas Central Coal Co.,* 129 F. 149.

[11] See Act 54, approved February 13, 1941, for procedure regarding resignation of agent and substitution of a successor.

rights prior in time, or while there are outstanding policies or contracts made or existing under it." A footnote to the text cites *American Loan & Investment Company* v. *Boraas,* 156 Minn. 431, 195 N. W. 271; *U. S. Truck Co.* v. *Pennsylvania Surety Corp.,* 259 Mich. 422, 243 N. W. 311.

Section 2249 of Pope's Digest makes foreign corporations subject to all the penalties imposed by law upon domestic corporations, and entitles them to the same privileges. But, irrespective of this provision, § 11, art. 12, Constitution, subjects them to the same regulations, limitations, and liabilities as like corporations of this State. In other words, our Constitution expressly excludes discrimination. No more familiar declaration of the law preventing arbitrary discrimination as distinguished from reasonable classification can be found than *Powers Manufacturing Company* v. *Saunders,* 274 U. S. 490, 47 S. Ct. 678, 71 L. Ed. 1165, "The clause in the Fourteenth Amendment forbidding a state to deny to any person within its jurisdiction the equal protection of the law," said Mr. Justice VAN DEVENTER, "is a pledge of the protection of equal laws, . . . and extends as well to corporations as to natural persons. . . . It does not prevent a state from adjusting its legislation to differences in situations or forbid classifications in that connection; but it does require that the classification be not arbitrary, but based on a real and substantial difference having a reasonable relation to the subject of the particular legislation."

Act 255, approved April 1, 1931, § 41, permits domestic corporations to be sued during a period of three years after dissolution. By analogy, and under the equal protection clause of the federal constitution, a foreign corporation is subject to suit for three years after withdrawing from the State, on contracts made subsequent to its entry into the State and to be performed here.

The holding in *National Liberty Insurance Co.* v. *Trattner,*[12] cited by petitioner, was that (quoting fourth

---

[12] Opinion by Mr. Justice Kirby April 4, 1927, 173 Ark. 480, 292 S. W. 677.

headnote in the Arkansas Reports) "The Legislature is presumed to intend that its statutes shall not apply to acts or contracts done or effected beyond the limits of the State and having no reference to or effect upon persons or property in the State." Craighead Circuit Court, it was said, did not obtain jurisdiction in respect of a foreign corporation through summons served on the Insurance Commissioner. Plaintiff was a non-resident, and the cause of action arose in consequence of transactions in a foreign state. By statute (Act No. 106 of 1873, Pope's Digest, § 7662) liability of foreign insurance "companies" to a resident of this state continues, regardless of any attempted revocation of the service agent's authority. No similar statute affecting foreign corporations, other than insurance companies, has been called to our attention, and we do not find that express provision has been made for service in such circumstances.

*Protas* v. *Modern Investment Corporation,* 198 Ark. 300, 128 S. W. 2d 360, is of no help to petitioner. The contract of insurance (other than the alleged oral agreement which was not substantiated) was made in Oklahoma. It covered property in that State. Contemplation of the parties—not varied by statute—was that it should be performed in Oklahoma. Plaintiffs' right to sue a corporation that had attempted to withdraw from Arkansas was not involved.

In the case at bar service upon Newman or upon the Auditor of State was good. It follows that the petition for prohibition must be denied.

Mr. Justice Knox was disqualified and did not participate in the consideration and determination of this case.