644

BURNSIDE *v.* FUTCH.

5-1632                                    317 S. W. 2d 717

Opinion delivered November 10, 1958.

THE FARMERVILLE BANK v. FUTCH.

5-1638

Opinion delivered November 10, 1958.

[Amended on Rehearing December 8, 1958]

*Spencer & Spencer,* for appellant.
*Brown & Compton,* for appellee.

*Brown & Compton,* for appellant.
*Spencer & Spencer,* for appellee.

GEORGE ROSE SMITH, J. These two appeals involve different phases of the same litigation and have been

consolidated in this court. In the more important of the two appeals, Case No. 5-1632, the basic issue is that of priority as between a judgment lien held by the appellants Burnside and a mortgage lien asserted by the appellee Farmerville Bank. The chancellor held that the bank's mortgage is valid and that it constitutes a first lien against the property that both creditors are pursuing. We have concluded that the chancellor's decision was erroneous, because the bank's mortgage was discharged by payment on January 14, 1957.

The property in question, a drive-in theater near El Dorado, was formerly owned by Carson J. Futch, a now insolvent debtor who incurred both the obligations sued upon in this case. The bank's claim preceded that of the Burnsides in point of time. Futch borrowed at least $23,000 from the bank, evidenced by what is referred to in the record as a hand note, and executed two separate mortgages to secure the debt. One of the mortgages was given in 1952 to secure what is called a real estate note, in the amount of $15,000, and covered a farm owned by Futch in Louisiana, where the bank is domiciled. The other mortgage was executed in 1953, to secure another $15,000 real estate note, and conveys the tract of land now in controversy, upon which a theater was constructed. Under the bank's practice the hand note represented Futch's actual indebtedness; the two real estate notes and mortgages were attached to the hand note as collateral security.

In 1954 Carson J. Futch entered into a contract by which he agreed to sell the theater property to E. J. Burnside, Jr., for $75,000. Burnside and his father, as partners, made payments totaling $13,000 upon the purchase price. On October 31, 1956, the Burnsides filed suit to rescind the contract and to recover their payments, it being alleged that certain outstanding mineral interests rendered Futch's title unmerchantable. By a decree rendered on February 28, 1957, the chancellor granted the Burnsides' request for rescission and awarded them a judgment against Carson J. Futch for the

$13,000 that had been paid. The decree declared that the Burnsides' judgment lien should be effective as of the filing of the notice of *lis pendens* on October 31, 1956. The bank was not originally a party to the suit for rescission, but it intervened on March 26, 1957, to assert its mortgage lien.

It seems clear that Futch, while the Burnsides' suit was pending, decided to denude himself of his lands in Arkansas and Louisiana. On January 14, 1957, he conveyed the Louisiana land to his brother, Robert T. Futch. On the same day Robert T. Futch went to the bank and borrowed $16,000, which was advanced to him in cash. With that money and about $8,000 of his own Robert paid in full Carson's indebtedness to the bank, which then totaled about $23,900. The bank marked Carson's hand note as paid and concedes that this transaction extinguished Carson's personal liability to the bank. The bank did not, however, mark as paid Carson's real estate note for $15,000, secured by the Arkansas mortgage, which had been attached to Carson's hand note as collateral security. Instead, the bank attached that real estate note and mortgage to Robert's $16,000 hand note, as collateral security. Robert's note was also secured by a new mortgage that he executed upon part of the Louisiana land he had received from Carson. On the following day, January 15, Carson conveyed the Arkansas land to Robert for a consideration of $10 and the assumption of the mortgage debt (which had actually been paid by Robert the day before).

On March 15, 1957, the bank filed a foreclosure suit upon Carson's $15,000 real estate note and mortgage. This suit was consolidated with the Burnsides' suit for rescission, in which the court had already rendered a decree and ordered a sale of the property. The chancellor's opinion upon final hearing in the consolidated case erroneously states that Robert had already assumed the Arkansas mortgage debt when he paid Carson's hand note on January 14. Upon this mistaken premise the chancellor concluded that there had been no break in the

continuity of the mortgage lien, Robert's personal liability having been merely substituted for Carson's. The decree accordingly upheld the bank's lien and awarded it priority.

The bank seems to have acted in reliance upon the law of Louisiana, but of course the validity of a lien on Arkansas land is to be determined by Arkansas law. *Midland Valley R. Co.* v. *Moran etc. Co.*, 80 Ark. 399, 97 S. W. 679, 10 Ann. Cas. 372. The chancellor, treating Robert as a purchaser, applied a rule analogous to that stated in *Walker* v. *Mathis*, 128 Ark. 317, 194 S. W. 702, where we held that payment of a mortgage by a subsequent purchaser will be regarded as an assignment when that course is necessary to protect the purchaser's right to subrogation. Here Robert T. Futch has not asked for subrogation and is hardly in a position to do so, as his promise to pay the mortgage debt was apparently the only consideration he gave for the property.

It seems clear enough that Robert's payment of Carson's indebtedness on January 14 extinguished the lien of the mortgage on the theater property. As Hughes points out in his treatise on Arkansas Mortgages, § 272: "Payment of the debt instantly and of itself discharges the mortgage." It goes without saying that there can be no lien when there is no debt, for a lien is purely a security device. At the close of business on January 14 it could not seriously have been contended that the bank had a lien on Carson's Arkansas land. The debt had been paid in full by Robert, who did not own the land and had not assumed the mortgage. Robert, it is true, owed the bank $16,000, but that obligation was secured by a different mortgage upon land in Louisiana. The discharged lien of the Arkansas mortgage could not be revived by the bank's attempt to reissue the paid note as collateral security for a debt owed by Robert, who had no interest in the Arkansas land and thus had no power to encumber the title. Hughes, *supra; Bailey* v. *Rockafellow*, 57 Ark. 216, 21 S. W. 227. It is immaterial that Robert later tried to

assume the discharged indebtedness, for the break in the continuity of the bank's lien is fatal to its claim to priority. The decree awarding a prior lien to the bank must therefore be reversed.

In Case No. 5-1638 the bank appeals from the order confirming the sale of the property. The court had directed that the real and personal property be sold separately. At the sale the bank bought the real property for $9,000 and bought certain items of personal property for $3,613.75. The Burnsides bought other items of personal property for $749.50.

The bank now contends that even though its mortgage contained only a metes-and-bounds description of the land, with no reference whatever to personal property or appurtenances, all the fixtures and equipment of the drive-in theater became real property within the mortgage description and were therefore part of the real property that the bank bid in at the judicial sale. To support this theory the bank president and Carson J. Futch testified that the money was lent to enable Futch to construct the theater and that both parties intended for the mortgage to cover all the personal property that was later used in the operation of the theater.

Even if it be assumed that the unexpressed intention of the parties to the mortgage could, as between themselves, extend the mortgage to cover property not described in the instrument, that question is not before us, for we are holding in the companion appeal that the mortgage is not a lien on the property. Instead, the issue is whether the real estate purchased by the bank at the judicial sale includes certain property that the court below found to be personalty. Some of the disputed items, such as a cot, an office desk, chairs, a lamp, etc., were not affixed to the realty at all. Other items, such as a motion picture projector, sound equipment, etc., could be removed without damage to the land. We are of the opinion that the chancellor was correct in

holding these articles to be personal property. *Anderson* v. *Southern Realty Co.*, 176 Ark. 752, 4 S. W. 2d 27. The decree in Case No. 5-1638 is therefore affirmed.