# HOME FEDERAL SAVINGS & LOAN ASSOCIATION
## *v.* CITIZENS BANK of Jonesboro

CA 93-385                                861 S.W.2d 321

Court of Appeals of Arkansas
Division I
Opinion delivered September 15, 1993
[Rehearing denied October 13, 1993.]

*Barrett & Deacon*, by: *Ralph W. Waddell*, and *D.P. Marshall, Jr.*, for appellant.

*Lyons & Emerson*, by: *Jim Lyons*, for appellee.

JOHN B. ROBBINS, Judge. This case involves the chancellor's refusal to restore three mortgages, which were released by appellant in error, to their priority status above appellee's judgment lien. The chancellor found that appellant's error in releasing its mortgages was the result of its own culpable negligence and refused to reinstate the priority position of the mortgages above appellee's judgment lien. Because we cannot say this finding is clearly against the preponderance of the evidence, we must affirm.

The facts in this appeal are undisputed. In 1990, appellant, Home Federal Savings and Loan Association, held a first, second, and third mortgage on property owned by Stanley and Barbara Broadaway, known as the "packing plant," in Jonesboro, Arkansas. These mortgages secured three separate promissory notes for various amounts with differing maturity dates. By the summer of 1990, all three of these notes had matured and the Broadaways began negotiations with appellant for additional time to attempt

to sell the mortgaged property in order to repay these notes. Appellant agreed to consolidate the three notes into a single note with a future maturity date. The new note, in the amount of $152,448.37, not only included the $140,242.69 amount owing on the three prior notes, but also included an additional indebtedness of $12,205.68 and had a different interest rate from the earlier notes. The additional indebtedness represented $10,414.68 interest, which was owed by the Broadaways to appellant on a residential mortgage loan and secured by a separate mortgage on the Broadaways' home, and $1,791.00 loaned by appellant to the Broadaways to cover the expenses of a new appraisal, title report, and recording fees. The new note and mortgage were executed on August 1, 1990, and the proceeds from this note were used to pay off the three earlier notes. The first, second, and third mortgages securing these earlier notes were released after these notes were paid, and the mortgage on the new note was recorded.

In releasing its mortgages, appellant had failed to discover that appellee, Citizens Bank of Jonesboro, had obtained a judgment against the Broadaways for $307,510.00, which had been entered of record after the three original mortgages but prior to the new August 1990 mortgage. By operation of law, the appellee's judgment constituted a lien on the packing plant; therefore, appellee's judgment lien ascended to priority above appellant's new mortgage when the three old mortgages were released. Appellant failed to discover this judgment lien despite the fact that it was reflected in the title report ordered by appellant.

It was not until a second title report of the packing plant property was ordered, in preparation for instituting foreclosure proceedings against the Broadaways, that appellant discovered appellee's intervening judgment lien and the loss of appellant's priority status. Appellant then contacted appellee in an attempt to regain its priority status. Appellee refused appellant's request although it had been unaware that appellant's three earlier mortgages had been released.

Appellee instituted foreclosure proceedings against the Broadaways and the packing plant property and named appellant as a party defendant. Appellant counterclaimed, asking that its three original mortgages on the property, which it had released in

error, be reinstated to their first priority position. The chancellor denied appellant's petition for reinstatement after a hearing on the merits, finding that the new note was intended to be a new loan rather than a continuation or renewal of the three existing notes and that appellant was guilty of culpable negligence in not discovering appellee's intervening judgment lien. It is from this ruling that appellant appeals.

■ It has long been the rule in Arkansas that, where a senior mortgagee in good faith and without culpable negligence satisfied the lien of his mortgage on the record in ignorance of the existence of an intervening mortgage on the same premises and took a second mortgage as a substitute, equity will restore the lien of the first mortgage, provided it can be done without working hardship or injustice on innocent parties. *Wooster* v. *Cavender*, 54 Ark. 153, 155, 15 S.W. 192 (1891). *See also Stephenson* v. *Grant*, 168 Ark. 927, 931, 271 S.W. 974, 976 (1925). Such relief, however, cannot be obtained to the injury of the intervening rights of an innocent third party who relied upon the release unless the party is chargeable with notice of the mistake or will not be prejudiced by the reinstatement. *Security Trust Co. of Freeport* v. *Martin*, 178 Ark. 518, 520, 12 S.W.2d 870, 871 (1928).

Appellant contends that reinstatement of its prior mortgages is proper because appellee did not rely on the release of its mortgages and has not suffered any prejudice because of appellant's mistake. Although appellant acknowledges that its new note includes approximately $12,000.00 of additional indebtedness which was not included in the original three notes, it argues that it disclaimed any right to these additional funds prior to trial and requested that its reinstated mortgages be limited to the amount of debt secured by the prior three mortgages.

■ As a general rule, where a mortgage has been released or satisfied through mistake or accident, it *may* be restored to its original priority as a lien unless the rights of innocent third persons are affected.

> *Ignorance of existence of other liens or rights.* Generally, where a new mortgage is substituted for an old one in ignorance of and under the mistaken belief that there was no other encumbrance on the premises, and the original mortgage is released of record, it may be restored and given

its original priority as a lien, where the rights of innocent third persons will not be affected. . . . Thus, when the release is intended to be effectual only by force of, and for the purpose of giving effect to, a new mortgage, as where a new mortgage is substituted for an old one for purposes of convenience, or with the object of extending the time of payment or in pursuance of an agreement to assign the debt, and, in ignorance of an intervening lien, the first mortgage is discharged of record, it may be restored and given its original priority. . . .

The result under the general rule will not be affected by the fact that the overlooked intermediate lien was on record at the time of the controverted release, *provided the mortgagee was not, in so acting, guilty of culpable negligence; but if the mortgagee is chargeable with such negligence relief will be denied, as where the mortgagee had actual knowledge of the intervening lien.*

59 C.J.S. *Mortgages* § 282 (1949) (emphasis added). While a court of equity has the power to grant relief from the consequences of a mistake, the application of this power must be largely controlled by the circumstances of each case. Spencer W. Symons, *Pomeroy's A Treatise On Equity Jurisprudence* § 856b, at 340 (5d ed. 1941).

We agree with appellant that appellee has not shown any reliance or that it will suffer any prejudice if appellant's mortgages are reinstated. Nevertheless, Arkansas law also requires a mortgagee to be free of culpable negligence in order to have its mortgage reinstated. *See Wooster v. Cavender*, 54 Ark. at 153, 15 S.W. at 192. The chancellor recognized this premise in his letter opinion:

Let me begin with the statement that the court recognizes the basic premise that a mortgage released by mistake may be reinstated, provided that such reinstatement is not detrimental to intervening rights of innocent third parties. As stated in the case of *Wooster v. Cavender*, such reinstatement is conditional, i.e. the mortgager must have acted in good faith and without culpable negligence, and provided the reinstatement does not work a hardship or injustice to innocent parties. That Home Federal was

guilty of culpable negligence is, in my opinion, without question.

◼◼ Appellant admits that it made a mistake in not discovering appellee's lien but maintains that this mistake was a mere error and not the result of culpable negligence. Whether this mistake was caused by appellant's own culpable negligence was a question of fact for the chancellor. Culpable negligence is the omission of something which a reasonable, prudent, and honest man would do, or the doing of something which such a man would not do, under all the circumstances surrounding each particular case. *St. Louis Iron Mountain & Southern Railway Co.*, 66 Ark. 248, 250, 50 S.W. 273, 274 (1899); *Hot Springs Railroad Co.* v. *Newman*, 36 Ark. 607, 611 (1880).

◼ In the case at bar, there was no evidence that appellant inquired of the Broadaways as to whether there were other mortgages on the property or judgments against them when it negotiated the new loan. The title report ordered by appellant clearly showed the judgment of appellee at the bottom of the report.

Connie Stevenson, assistant loan officer with appellant, testified that part of her responsibilities was to review title reports and to prepare the necessary documents to secure appellant's first liens on property. She stated that she began working in the Consumer Lending Department of appellant in January 1990 and her only formal training for this position was working for three weeks with the lady who was leaving that area. She stated that she was a consumer loan processor until January 1992 when she became an assistant loan officer. She testified that she obtained the title work on the property from the abstractor but could not remember examining the report. She stated that she was sure she did review it but did not recall seeing the judgment lien of appellee reflected on that report. She admitted that, at that time, she did not understand the legal significance of a judgment on a title report. She stated that appellant had a first, second, and third mortgage on the property and she ordered the title report to see if someone else had a fourth mortgage on the property.

Dan Trevathan, president of appellant, testified that he is responsible for the overall operations of appellant and that he instructed Connie Stevenson to order a title search on the

property. He testified that he did not review the title report and that he normally does not do so unless the loan secretary brings a problem to his attention. He testified that he was concerned about an additional mortgage on the property of which he might not have been aware but went ahead with the closing of the loan when the title report did not reveal another mortgage. He denied that he had any actual knowledge of appellee's judgment lien but stated he knew that Mr. Broadaway had purchased property after a foreclosure from appellee and he did not check to see if that foreclosure decree had been satisfied before releasing appellant's mortgages. He also stated that he would have handled the transaction differently if he had been aware of appellee's judgment lien. He admitted that anyone closing loans and reviewing title reports ought to know the significance of a judgment lien.

Based on the undisputed evidence before the chancellor, we cannot say his finding that appellant was guilty of culpable negligence in releasing its mortgages is clearly against the preponderance of the evidence. Chancery cases are tried *de novo* on the record on appeal; however, we will not reverse the findings of the chancellor unless clearly erroneous or clearly against the preponderance of the evidence. *RAD-Razorback Ltd. Partnership* v. *B.G. Coney Co.*, 289 Ark. 550, 552, 713 S.W.2d 462, 464 (1986); Ark. R. Civ. P. 52.

Because we are affirming the chancellor's finding of culpable negligence on the part of appellant, we need not address appellant's second point on appeal, that the chancellor erred in finding the consolidation loan was a new transaction. Suffice it to say we have reviewed the evidence and the testimony presented, and we cannot say his decision in this regard is clearly against the preponderance of the evidence.

Affirmed.

COOPER and MAYFIELD, JJ., agree.