PEOPLES BANK of Imboden *v.* Geraldine BURGESS

CA 96-794                                    942 S.W.2d 264

Court of Appeals of Arkansas
Division I
Opinion delivered April 9, 1997

*Ponder & Jarboe*, by: *Dick Jarboe*, for appellant.

*Castleman Law Firm*, by: *Bob Castleman*, for appellee.

JOHN B. ROBBINS, Chief Judge. In January 1990, appellant Peoples Bank of Imboden loaned Richard Burgess and his wife, Melinda Burgess, the sum of $160,200.00 toward the purchase of eight acres of land and a salvage business owned by Richard's parents, Gib and Geraldine Burgess. The promissory note to the bank was secured by a mortgage on the real property and a security interest in several vehicles. Richard Burgess and Melinda Burgess were makers of this promissory note, and Gib Burgess and Geraldine Burgess signed as guarantors.

In August 1990, Richard Burgess and Melinda Burgess gave Gib Burgess, now deceased, and Geraldine Burgess, the appellee herein, a promissory note in the amount of $150,000.00. This note apparently represented the remainder of the purchase price owed by Richard Burgess and Melinda Burgess. As security for payment of the note, a mortgage on the same property mortgaged to appellant bank was executed by Richard Burgess and Melinda Burgess in favor of Gib Burgess and Geraldine Burgess.

On March 21, 1991, the appellant bank loaned Richard Burgess $4,501.00 for the purchase of a 1987 Dodge truck, and received a promissory note executed solely by Richard Burgess. On October 1, 1991, the bank loaned $25,024.00 to Richard Burgess and Melinda Burgess and received as collateral a security interest in certain automobiles.

The original $160,200.00 loan to the Burgesses was extended by written agreement on March 9, 1992. The extension agreement reduced the interest rate from 12 percent to 8 1/2 percent and reduced the quarterly payments on the note from $10,050.00 to $5,000.00. The $25,024.00 loan was also extended and its interest rate reduced from 10 percent to 8 1/2 percent.

On December 16, 1993, the bank entered into another loan transaction with Richard Burgess, who signed as sole obligor.

The amount of this loan equaled the unpaid balances of the three previous loans ($129,964.64) and $301.00 of filing fees. The new promissory note was in the principal amount of $130,265.00 with interest at 8 percent and provided that payment of the total indebtedness was due on December 16, 1994. A mortgage on the same eight acres of real property was executed by Richard Burgess as security for the loan. In conjunction with the closing of the December 16, 1993, loan, the appellant bank gave Richard Burgess receipts that reflected payment in full of the indebtedness owed on the first and third loans.

Richard Burgess defaulted on the final, $130,265.00 loan, and on March 13, 1995, the bank commenced a foreclosure action. Appellee Geraldine Burgess was not named as a party in the initial complaint, but on motion she was allowed to intervene. The bank then amended its complaint to include allegations of priority because of its original 1990 loan and mortgage.

After considering the evidence and the arguments of counsel, the chancery court determined that a novation had occurred when the bank combined these three loans and entered into the December 16, 1993, loan transaction with Richard Burgess. The chancery court specifically found that the bank did not intend to release its priority status when it executed the final loan. Nevertheless, the chancery court concluded that the first and third loans had been satisfied, thereby discharging those debts and extinguishing the original mortgage lien. The court found that, due to the bank's negligence, the appellee was entitled to a first lien on the subject real property with the bank's mortgage lien being secondary. The bank was awarded judgment against Richard Burgess in the amount of $148,408.40, and Geraldine Burgess was awarded judgment in the amount of $181,633.00. The court ordered that the proceeds of a public foreclosure sale of the real property be first applied toward satisfaction of the judgment in favor of Geraldine Burgess.

For reversal, the bank argues that the chancery court erred in finding that Geraldine Burgess was entitled to a first lien on the subject property. It contends that its final loan to Richard Burgess was merely a consolidation of existing loans and was made as an

accommodation to him. The bank relies on the fact that it never intended to release its original mortgage, and submits that this fact should have prevented its lien from becoming inferior to that of Geraldine Burgess. The bank asserts that, whether the final transaction with Richard Burgess constituted a novation, extension, or modification, it should still have retained a first lien.

In their briefs, both appellant and appellee cite *Home Federal Savings and Loan Assoc. v. Citizens Bank*, 43 Ark. App. 99, 861 S.W.2d 321 (1993). In that case, the appellant held first, second, and third mortgages on property owned by a third party. When the mortgagors needed additional time to repay the three notes secured by these mortgages, the appellant agreed to consolidate them. The new note not only included the amount owing on the three prior notes, but also included an additional indebtedness and had an interest rate different from the earlier notes. The appellant released the first, second, and third mortgages, and recorded the mortgage securing the new note.

Prior to releasing its mortgages, the appellant in the *Home Federal* case failed to discover that the appellee bank had obtained a judgment against the mortgagors, which had been entered of record and become a lien after the original three mortgages were recorded but prior to the new, consolidated mortgage. The chancery court found that the new note was intended to be a new loan rather than a continuation or renewal of the three prior notes, and concluded that the appellant had lost its priority status. On appeal, this court affirmed. In doing so, we noted that the appellee failed to show any reliance or possible prejudice if the appellant's mortgages were reinstated. Nonetheless, we stated that, in such cases, a mortgagee must be free from culpable negligence in order to have its mortgage reinstated. We found that, under the facts of that case, the chancellor's finding that the appellant demonstrated culpable negligence was not clearly against the preponderance of the evidence.

In the instant case, it is our duty to affirm the findings of the chancery court unless they are clearly erroneous. *See RAD-Razorback Ltd. Partnership v. B.G. Coney Co.*, 289 Ark. 550, 713 S.W.2d 462 (1986). The chancery court found that Peoples Bank

of Imboden lost its priority status through its own negligence and poor banking practices. We find that this decision was not clearly erroneous and, therefore, affirm the order of the chancery court.

■ ■ Although the bank in the case at bar did not intend to release its original mortgage lien, its actions produced this effect. The supreme court has observed that "payment of the debt instantly and of itself discharges the mortgage," and that "there can be no lien when there is no debt." *Burnside v. Futch*, 229 Ark. 664, 647, 317 S.W.2d 717, 720 (1958). Although proceeds from the final loan made by the bank to Richard Burgess were used in part to satisfy the initial loan that was secured by a mortgage lien on the same real property, the proceeds were also used to pay off other loans that were not so secured. In addition, the interest rate on the final loan was 8 percent, a rate different from the interest rate on the initial loan. All of the parties to the first loan were not also parties to the final loan, and it has been held that a change in the parties renewing a mortgage amounted to satisfaction of the discharged lien, and not a continuation of the old mortgage as against intervening liens, at least where the instrument of discharge contains an express recital of payment. *See* 55 AM. JUR. 2D *Mortgages* § 404 (1996). In the present case, the parties to the two mortgages were not identical, and the bank gave Richard Burgess a receipt that reflected payment in full of the indebtedness on the first loan.

■ We think that Peoples Bank of Imboden could have taken steps to protect its priority status in this case. We find no error in the chancellor's conclusion that the bank failed to do so, and that the bank released its first lien on the subject property when it extinguished the prior loans and entered into the loan transaction of December 16, 1993.

Affirmed.

STROUD and CRABTREE, JJ., agree.