Stephen L. CHENETTE, Appellant,

v.

TRUSTEES OF IOWA COLLEGE, GRINNELL, IOWA, d/b/a Grinnell College, and Grinnell College, Appellees.

No. 20110.

United States Court of Appeals, Eighth Circuit.

Aug. 27, 1970.

**50**

Raul O. Salazar, of Sween & Salazar, Minneapolis, Minn., for appellant, Har-lan Sween, Minneapolis, Minn., and James A. Jackson, of Lawyer, Lawyer & Ray, Des Moines, Iowa, filed brief of appellant.

H. Richard Smith, of Ahlers, Cooney, Dorweiler, Allbee & Haynie, Des Moines, Iowa, for appellees, and filed brief.

Before VAN OOSTERHOUT, Circuit Judge, JOHNSEN, Senior Circuit Judge, and HEANEY, Circuit Judge.

JOHNSEN, Senior Circuit Judge.

Stephen L. Chenette, a citizen of Minnesota, appeals from the granting of a summary judgment against him as plaintiff in a diversity suit brought in the District Court for the Southern District of Iowa for personal injury sustained by him at Grinnell College, in Grinnell, Iowa, from alleged negligence of the College.[1]

Plaintiff was a musician employed by the Minnesota Orchestral Association, an insured employer under the Workmen's Compensation Act of Minnesota, 13 M.S.A. Ch. 16. The accident involved occurred when plaintiff walked into a glass-door at the front entrance to the Roberts Theater, one of the College's facilities, following the performance of a concert there by the Orchestral Association. Plaintiff was paid by his employer the amount of benefits provided by the Minnesota Workmen's Compensation Act for his injury as one "arising out of and in the course of [his] employment". M.S.A. § 176.021.

One of the defenses set up by the College was that plaintiff was precluded from maintaining the action by M.S.A. § 176.061, subd. 1, which provides that "Where an injury * * * for which compensation is payable occurs under circumstances which create a legal liability for damages on the part of a party other than the employer and at the time of such injury * * * that party was in-

---

1. The complaint designated as defendants the "Trustees of Iowa College, Grinnell, Iowa, d/b/a Grinnell College, and Grinnell College", but the parties stipulated that this designation should be consider-ed as "one entity". The District Court accordingly used the name "Grinnell College" in such signification and we similarly use it here.

sured or self-insured in accordance with this chapter, the employe * * * may proceed either at law against that party to recover damages or against the employer for compensation, but not against both"; that plaintiff's receipt of compensation benefits under the Minnesota Workmen's Compensation Act from his employer constituted an election of remedies as to payment for his injury; and that such election was by the statutory subdivision made a bar to the maintaining by him of the present action.

Plaintiff countered in reply that his receipt of benefits under the Minnesota Workmen's Compensation Act could not operate as a bar under § 176.061, subd. 1, because the provisions of that subdivision were by subd. 4 of the section made to "apply only where the employer liable for compensation and the other party legally liable for damages are insured or self-insured and engaged in the due course of business, (a) in furtherance of a common enterprise, or (b) the accomplishment of the same or related purposes in operation on the premises where the injury was received at the time thereof"; and that the acts in which plaintiff had been engaged at the time of the accident did not come within the conditions of subd. 4 for the operation of subd. 1, as having involved a common enterprise or project between Grinnell College and plaintiff's employer or, if a common enterprise or project were involved, as having constituted a common activity thereunder by him and employees of Grinnell College.

A stipulation was entered into between the parties as to some of the facts underlying the activities involved and the relationships existing at the time and place of the accident. The facts which were thus given stipulational establishment were that the injury to plaintiff had occurred at the Roberts Theater on the College campus; that plaintiff, as a musician employed by the Minnesota Orchestral Association, had just prior to the accident "participated in a concert of the Minnesota Orchestral Association and the defendant", held at the theater;

that among the employees of the Orchestral Association for the event was a regular stage manager, who had the duty to oversee the setting up and taking down of music stands and chairs for the orchestra and "the unloading and loading of the musicians' instruments from the bus in which the Minnesota Orchestral Association travelled"; that two employees of Grinnell College "who were regular custodians at the theater * * worked under the stage manager's supervision and direction" in getting these incidents accomplished; that as to the loading and unloading of the musical instruments, however, "it was optional with members of the Minnesota Orchestral Association as to whether they carry their own instruments to and from the concert or whether this was done by, or under the direction of, the stage manager"; that at the time of the accident "plaintiff had just changed clothes in the basement of the theater following the concert and had carried his suit and instrument up the stairs and out the rear door of the theater", had loaded them onto the bus "and was returning to reenter the theater for the purpose of finding a water fountain to get a drink of water"; that plaintiff went to the front entrance of the theater to enter the lobby area and "in the process of entering came in contact with a glass door" from which his injury resulted; and that "at this same time the defendants' two custodial employees were carrying instruments of the members of the Minnesota Orchestral Association from the stage of the theater to the same bus where plaintiff had loaded his suit and instrument and were loading such instruments thereon".

Grinnell College regarded these partial facts as establishing as a matter of law that the situation had been one of common enterprise or project between it and the Minnesota Orchestral Association in the holding of the concert and in the performance of the things being done at the time and place of the accident; and that the loading by plaintiff of his own instrument onto the bus thus constituted

a common activity with the College's employees in such enterprise or project of the two employers. It was upon this basis that Grinnell College's motion for summary judgment was predicated—that the facts admitted by the stipulation required it to be held that plaintiff's suit against the College came within the preclusion or bar of subd. 1 and subd. 4 of § 176.061.

It will be noted that we have characterized the stipulation as setting out *some of the facts*, or *partial facts* as to the situation. Thus the nature and scope of the arrangement or relationship involved between Grinnell College and the Orchestral Association as to the holding of the concert cannot be said to be shown. The stipulation does contain the expression "a concert of the Minnesota Orchestral Association and the defendants", and from this appellee's brief argues that "It is clear from the stipulation that Chenette's employer and the College joined together to present the concert".

■ Granting that the expression implies that some form of arrangement and scope of relationship must have existed between the parties as to the concert, we do not believe that the general and ambiguous characterization of the event as "a concert of the Minnesota Orchestral Association and the defendants" enables it to be concluded in summary judgment that all the incidents, or every task involved therein, related in any way to the holding of the concert, had been made a matter of joint undertaking by the two employers as being required to be performed by their employees in common activity.

Nor does it seem to us that the mere further facts in the stipulation that the Orchestral Association's stage manager had the duty to oversee the setting up and taking down of music stands and chairs for the orchestra and the loading and unloading of the instruments of the musicians onto and from the bus, and that the two custodial employees of the College had worked with and under the stage manager's direction in getting these incidents accomplished are so ab-solute as to command the conclusion as a matter of law that the working together of the employees in these respects necessarily was being done by virtue of an agreement or understanding between the two employers to this effect.

With nothing else indicated as to the relationship between the College and the Orchestral Association, there existed room in the situation for the rational possibility that this working together could have been done, not in obligational undertaking between the two employers as a joint interest, but on the basis of a separate interest in each. The interest of the College in the things being done at the time of the accident could simply have been one of having its custodial employees remain around and be certain that the theater was cleared of the orchestra's paraphernalia so that the building could be locked up, and of the custodial employees having in this situation engaged in personal assistance upon a volunteer basis in order that this result might be hastened. Similarly the interest of the Orchestral Association could have been the separate residual concern on its part of getting its music stands, instruments, etc., gathered together and loaded onto its bus so that the orchestra would be able to get on its way.

But beyond this, even if it could properly be held that the clearing of the theater of the orchestra's paraphernalia and the loading of it onto the bus had been made a matter of mutual arrangement between the employers to have their employees work together to accomplish this as a joint employer interest and so to have caused it to constitute under the Minnesota statute a common activity of the employees, we do not think it could be said to legally follow that plaintiff's act of loading his own instrument would therefore have to be regarded as a working together by him in such common activity.

On the facts set out in the stipulation, plaintiff had no personal duty to assist in these incidents, and it is not shown that he did anything more in interest or activity than merely to take care of his own

instrument. With the stipulation making clear that this was wholly an optional right in him, which he could exercise or not, as he chose, there was in our view basis rationally to regard his act of carrying his instrument onto the bus as wholly an act of self-interest on his part. It was, in our opinion, at least as much capable of being held to have removed plaintiff's instrument from the field of the common activity to be performed by those employees who had a duty in this respect as to be held to have constituted an employee participation or joinder by plaintiff to accomplish the interest of the two employers.

■■ The point of this is that the court's conclusion necessarily involved a choice or evaluation between two rational possibilities. Evaluative judgment between two rationally possible conclusions from facts cannot be engaged in on summary judgment. Only where the facts supportive of a summary judgment can be held to have so unambiguously established the actualities of a situation as to leave no basis of substance for dispute as to their reality or as to the conclusion required from them is a summary judgment entitled to be entered.

■ In relation to our discussion of the factual aspects of the present situation, a few of the relevant Minnesota decisions will be briefly noted. Section 176.061 affords no protection whatsoever to a third-party employer unless "the employees [of the two employers] are engaged in a common activity". See McCourtie v. U. S. Steel Corporation, 253 Minn. 501, 93 N.W.2d 552, 556, and the cases there discussed. To constitute such "common activity" under the Minnesota statute, more must be involved than a mere joint performance by such employees of some incidents or tasks in which each employer may have some interest. Urbanski v. Merchant's Motor Freight, Inc., 239 Minn. 63, 57 N.W.2d 686, 690, Schneider v. Texas Company, 244 Minn. 131, 69 N.W.2d 239, 336. The interest of the employers cannot be simply individual or separate; it must be one as to which they have engaged in

fusion and made a matter of mutual concern and undertaking between them. Thus, common activity cannot exist within the purview of the statute except as to elements of substance capable of constituting a project relationship (*Urbanski*, supra, 57 N.W.2d at 690–691), and as to the performance of which "the masters have joined forces and in effect put the servants into a common pool". Gleason v. Geary, 214 Minn. 499, 8 N.W.2d 808, 814.

■ The Minnesota decisions also require that the working together of the employees in a joint employer-interest must be "in such fashion that they are exposed [or subject] to the same or similar hazards * * *." Swanson v. J. L. Shiely Co., 234 Minn. 548, 48 N.W.2d 848, 854; *McCourtie*, supra, 93 N.W.2d at 556. We need not, however, consider this aspect here. Mention is made of it only in further indication of the very narrow scope which the Minnesota Supreme Court has given to the preclusion or bar of § 176.061.

Upon the things said, we hold that the facts set out in the stipulation do not entitle Grinnell College to a summary judgment as a compelled conclusion. As to plaintiff's accident and injury, it would not on these facts be required to be held that "the defendants and the plaintiff's employer, Minnesota Orchestral Association, (were) engaged in due course of business, in furtherance of a common enterprise or the accomplishment of the same or related purposes in operation on the premises where the injury was received at the time thereof, within the meaning of Section 176.061, subdivision 4, Minnesota Code (sic) Annotated"—which was the language of the question posed by the motion for summary judgment.

There is, however, another reason also why the stipulation would have to be held not to provide a sufficient basis for a summary judgment. Under the provisions of § 176.061, there exists no preclusion or bar as to a negligence suit by an injured employee against a third party

unless "that party was insured or self-insured in accordance with this chapter". The condition that a third party, in order to be able to come within the preclusion or bar of § 176.061, must himself be either insured or self-insured under the Minnesota Workmen's Compensation Act is one which has repeatedly been given specific mention in the Minnesota Supreme Court opinions. For example, *McCourtie*, supra, 93 N.W.2d at 554 and 556, *Schneider*, supra, 69 N.W.2d at 335; *Urbanski*, supra, 57 N.W.2d at 689; *Gleason*, supra, 8 N.W.2d at 813; Gentle v. Northern States Power Co., 213 Minn. 231, 6 N.W.2d 361, 363.

■ There is nothing to show that Grinnell College was such a qualified third party, nor in its status as an Iowa educational institution would it seem likely that it was in fact insured or self-insured against employee injury under the Minnesota Workmen's Compensation Act. But whatever the fact might be in this regard, in any event the question was not dealt with in the court's memorandum opinion probably because the parties overlooked it or for other reason failed to present it. In the court's examination, however, of whether the facts before it were such as to entitle Grinnell College to claim the right of preclusion or bar under the provisions of the Minnesota statute, the court could not recognize any right of preclusion or bar except such as would have existence upon the requirements and conditions of the statute.

The observation may be added in concluding that there has not been presented, and no consideration thereof is necessary to our result, the question of whether the Minnesota statute was intended to have extra-territorial operation against a suit by an employee of a Minnesota compensation-covered employer against another Minnesota compensation-covered employer for negligent injury occurring in another state, brought in the courts of such other state; or if so, whether here the courts of Iowa would be legally required to give effect to the preclusion of the Minnesota stat-ute; or if not, whether Iowa's public policy is such as would require its courts to refuse to accord recognition to such preclusion as to a negligent injury which had occurred in its own domain.

Reversed and remanded.