Carol Rae WRIGHT; et al., Plaintiffs,

v.

Daniel Paul NEWMAN; et al., Defendants.

Civ. No. 81–5049.

United States District Court, W. D. Arkansas, Fayetteville Division.

May 14, 1982.

Frank J. Huckaba, Poynter, Huckaba & Gearhart, Mountain Home, Ark., for plaintiffs.

Lewis D. Jones, Jones & Segers, Fayetteville, Ark., for GMAC.

Griffin Smith, Smith & Nixon, Little Rock, Ark., for Ford Motor Credit Co.

Thad McCanse, Flanigan & McCanse, Carthage, Mo., for Scheall Driveaway.

W. W. Bassett, Jr., Bassett, Bassett & Bassett, Fayetteville, Ark., for Phil Long Ford, Inc.

Raymond E. Whiteaker, Woolsey, Fisher, Whiteaker, McDonald & Ansley, Springfield, Mo., for American Auto Shippers, Inc.

Paul D. Cowing, Linde, Thomson, Fairchild, Langworthy, Kohn & Van Dyke, Kansas City, Mo., Lynn Wade, McAllister & Wade, Fayetteville, Ark., for Daniel Paul Newman.

Roy Gene Sanders, Matthews & Sanders, Little Rock, Ark., for Daniel Paul Newman and Scheall Driveaway.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

### Introduction

This case arises under 28 U.S.C. § 1332 out of a fatal automobile accident between certain Arkansas residents and Daniel Newman, which occurred in Missouri. Plaintiffs alleged that the driver of the other vehicle, Newman, was an agent or employee of the other defendants, and that certain negligent acts and omissions precipitating the collision occurred in Arkansas, by virtue of which, applying *respondeat superior*, the other defendants are allegedly liable.

Defendants Newman, Scheall Driveaway and American Auto Transporters have at-

tacked the jurisdiction of this Court. Defendants Ford Motor Credit Company, General Motors Acceptance Corporation, and Phil Long Ford, Inc. have moved for summary judgment, primarily on the agency issue.

All parties have timely responded and the issues are ripe for review by the Court.

For the reasons developed herein, the Court concludes that defendants Ford Motor Credit Company, General Motors Acceptance Corporation, and Phil Long Ford, Inc. are entitled to judgment on their motions. The Arkansas plaintiffs will be allowed to proceed against defendants Newman, Scheall Driveaway, and American Auto Shippers, Inc.

### Findings of Fact

1. Plaintiffs Carol Rae Wright, Bonnie Lynn Wright, and the Estate of Tina Marie Wright, deceased, by the personal representative, Patricia Wright, are residents and citizens of the State of Arkansas. Plaintiff Theodore F. Wright was at all times pertinent hereto, a citizen and resident of the State of Missouri.

2. The defendant, Daniel Paul Newman is a resident and citizen of the State of Wyoming. The defendant, Scheall Driveaway of Lakewood, Colorado, is an unincorporated business concern, wholly owned by Mr. John Scheall, a citizen and resident of the State of Colorado. The defendant, Scheall Driveaway of Scottsdale, Arizona is an unincorporated business concern, wholly owned by Mrs. Bonnie Scheall, a citizen and resident of the State of Arizona. At all times pertinent hereto, Scheall Driveaway of Lakewood, Colorado, and Scheall Driveaway of Scottsdale, Arizona, were engaged in a contractual agency relationship with defendant American Auto Shippers, Inc., a corporation organized under the laws of the State of New York, with its principle place of business located in a state other than the State of Arkansas. The defendant, Phil Long Ford, Inc., is a corporation organized under the laws of the State of Colorado, with its principle place of business located in the State of Colorado. The defendant,

Ford Motor Credit Company is a corporation organized under the laws of the State of Delaware, with its principle place of business located in a state other than the State of Arkansas. The defendant, General Motors Acceptance Corporation, is a corporation organized under the laws of the State of New York, with its principle place of business located in a state other than the State of Arkansas.

3. The matter in controversy exceeds the sum of $10,000.00, exclusive of interest and costs.

4. Plaintiffs allege that on March 4, 1980, the plaintiff, Bonnie Lynn Wright was driving a vehicle owned by plaintiff, Theodore Wright, with plaintiffs Carol Wright and Tina Wright as passengers, in a southerly direction on U. S. Highway No. 71 in Missouri. Plaintiffs allege that defendant Daniel Newman, acting as the agent, servant and employee of the other defendants, was, at that time and place, proceeding in a northerly direction. Plaintiffs allege that a vehicle being towed by defendant Newman broke loose and collided with plaintiffs' vehicle, killing Tina Wright, demolishing plaintiffs' vehicle, and injuring some of the other plaintiffs.

5. Plaintiffs allege that defendant Newman negligently performed certain acts in the State of Arkansas with respect to the hooking up of the vehicle driven by him and the vehicle being towed. Plaintiffs allege that these negligent acts and omissions contributed to the fatal accident. Plaintiffs further allege that the defendants other than defendant Newman negligently selected defendant Newman and committed other affirmative acts of negligence.

6. The Court finds that Colorado is the state with the most significant relationship to the Newman(Scheall)/Ford relationship, in nature of contacts, quantity of contacts, and interest. The Court finds that the Newman(Scheall)/Ford relationship was entered in the State of Colorado and was to be performed in the State of Colorado.

7. The Court finds that defendants Newman and/or Scheall were independent

contractors with respect to defendant Ford Motor Credit Company. The evidence is not such that there is the slightest doubt that a genuine issue of fact is not present on this point.

8. The Court similarly finds that Arizona is the state with the most significant relationship to the Newman(Scheall)/GMAC relationship, in nature of contacts, quantity of contacts, and interest. The Court also finds that the Newman(Scheall)/GMAC relationship was entered in the State of Arizona and was to be performed in the State of Arizona.

9. The Court finds that defendants Newman and/or Scheall were independent contractors with respect to defendant GMAC. The evidence is not such that there is the slightest doubt that a genuine issue of fact is not present on this point.

10. The Court finds that there is no genuine factual issue present with respect to any affirmative acts of negligence of either defendant Ford or defendant GMAC. Both defendants had satisfactorily utilized defendant Scheall Driveaway on numerous instances without incident.

11. The defendant, Phil Long Ford, Inc., has no connection with this matter. Phil Long Ford was merely the destination point of the pickup truck driven by Newman. The evidence with respect to defendant Phil Long Ford, Inc. is undisputed and plaintiffs no longer desire to pursue any claim against it.

12. Several acts and omissions of defendant Newman occurred in the State of Arkansas. The plaintiffs' claim for relief arguably arose from these acts and omissions. Arkansas' "long arm" statute, Ark. Stat.Ann. § 27–2502C(1)(c) is applicable to the facts of the instant case.

13. The relationship of defendant Newman to Scheall Driveaway is not so clear that the Court is at liberty to decide its nature. This relationship is a genuine issue of material fact to be decided by the trier of fact.

14. Similarly, the relationship of defendant Scheall Driveaway to defendant American Auto Shippers, Inc. is a legitimate matter for the trier of fact. This relationship presents a genuine factual issue material to the instant case.

15. The Court finds that plaintiffs have presented a *prima facie* showing of jurisdictional facts with respect to defendants Newman, Scheall Driveaway, and American Auto Shippers, Inc.

## Discussion

The plaintiffs, Carol Rae Wright, Bonnie Lynn Wright, the Estate of Tina Marie Wright, deceased, by the personal representative, Patricia Wright, and Theodore F. Wright instituted this action against the defendants, Daniel Paul Newman, Scheall Driveaway, American Auto Shippers, Inc., Phil Long Ford, Inc., General Motors Acceptance Corporation, and Ford Motor Credit, on April 29, 1981.

Plaintiffs alleged that on March 4, 1980, the plaintiff, Bonnie Lynn Wright, was driving a 1977 Buick Skyhawk owned by the plaintiff, Theodore F. Wright, in a southerly direction on U. S. Highway 71, in Missouri. Plaintiffs Carol Rae Wright and Tina Marie Wright were passengers in the vehicle.

At that time, the plaintiffs allege that the defendant, Daniel Paul Newman, while acting as the agent, servant and employee of defendants Scheall Driveaway, American Auto Shippers, Inc., Phil Long Ford, Inc., General Motors Acceptance Corporation (hereinafter "GMAC"), and Ford Motor Credit Company (hereinafter "Ford"), was driving a 1978 Ford pickup truck in a northerly direction on U. S. Highway 71, towing a 1977 Pontiac Firebird.

Plaintiffs alleged that the Pontiac Firebird broke loose from the pickup truck, crossed the center line, and crashed head-on into plaintiff's vehicle.

Tina Marie Wright was killed, the other occupants of plaintiffs' automobile were injured, and their vehicle was totally demolished.

Plaintiffs alleged that defendant Newman was negligent, careless, and reckless in

failing to keep a proper lookout, in failing to keep the towed vehicle under proper control, in driving at a speed greater than reasonable and prudent, in failing to allow plaintiffs' vehicle one-half of the traveled roadway, in failing to yield the right of way, in violating Motor Carrier Safety Regulations, in using an unsafe and inadequate tow bar assembly, and in failing to use safety chains.

Plaintiffs alleged that the negligent acts of defendant Newman are imputable to the other defendants by virtue of agency principles and *respondeat superior*, and further that the other defendants were directly at fault in permitting their vehicles to be operated by defendant Newman in a defective and unsafe condition, in failing to inspect, in failing to provide proper equipment and instructions, and in negligently entrusting the towing to defendant Newman.

On May 19, 1981, defendant GMAC answered plaintiffs' complaint, generally denying all allegations, specifically denying that defendant Newman was an agent or employee of GMAC.

On June 3, 1981, defendant Ford moved for dismissal on the ground that the sole connection of Ford with the transaction involved, was the existence of a security interest in the pickup truck operated by defendant Newman.

On June 8, 1981, defendants Newman, Scheall Driveaway, and American Auto Shippers, Inc. moved to dismiss for failure of plaintiffs to state a claim, improper service of process, lack of personal jurisdiction, and improper venue.

On July 8, 1981, defendant Phil Long Ford, Inc. answered, generally denying plaintiffs' allegations, and moved to dismiss plaintiffs' complaint for failure to state a claim against it.

On July 17, 1981, plaintiffs filed an amended complaint, adding the allegations that the negligence of defendant Newman was further occasioned by his operation of the vehicles in violation of Arkansas and Missouri laws and by his violation of licenses, permits, rules and regulations of the Interstate Commerce Commission. The amended complaint additionally asserted that certain acts of negligence occurred in the State of Arkansas: the violation of Motor Carrier Safety Regulations, failing to use ordinary care, operating the vehicles in an unsafe condition, utilizing inadequate two equipment, failing to safely connect the two assembly, failure to inspect the same, failure to place safety chains from the towed vehicle to the pickup, in violating Arkansas law with respect to two connections, and in violating Interstate Commerce Commission rules.

Defendants again responded. Defendants Newman, Scheall Driveaway, and American Auto Shippers moved to dismiss for lack of personal jurisdiction, improper service, improper venue, and to make the amended complaint more definite and certain.

On November 18, 1981, this Court granted the motions to dismiss of defendants Newman, Scheall Driveaway, American Auto Shippers, Inc., and Phil Long Ford, Inc. for lack of personal jurisdiction. It was noted at that time that defendants GMAC and Ford "do business" within Arkansas and were served with process in the State of Arkansas and therefore, did not challenge the *in personam* jurisdiction of this Court. (*Wright, et al. v. Newman, et al.*, 81–5049, Memorandum Opinion, p. 1, n. 1, Nov. 18, 1981).

Subsequently, plaintiffs moved for reconsideration and vacation of the dismissal order.

In December, 1981, defendants Ford and GMAC moved for summary judgment. The other defendants responded to plaintiffs' motion for reconsideration and vacation. On January 29, 1982, defendant Phil Long Ford moved for summary judgment. Plaintiffs subsequently replied to the motions for summary judgment, replied to the response, and moved for voluntary non-suit as to plaintiff Theodore F. Wright.

It is fundamental that a motion for summary judgment lies only when there is no genuine issue of material fact. Ac-

cordingly, the court cannot try issues of fact on a Rule 56 motion but may only determine whether there are genuine issues to be tried. *Neff v. World Publishing Co.,* 349 F.2d 235 (8th Cir. 1965). The summary judgment procedure is well adapted to expose sham claims and defenses. *Caylor v. Virden,* 217 F.2d 739 (8th Cir. 1955). The summary judgment procedure must be used with a due regard for its purposes and should be cautiously invoked so that no person will be improperly deprived of a trial of genuinely disputed factual issues. *Traylor v. Black, Sivalls & Bryson, Inc.,* 189 F.2d 213 (8th Cir. 1951). However, when the requirements of the rule are met the procedure should be viewed with favor and applied according to its terms. *Freeman v. Continental Gin Co.,* 381 F.2d 459 (5th Cir. 1967); *Minnesota Mining & Mfg. Co. v. U. S. Rubber Co.,* 279 F.2d 409 (4th Cir. 1960). To determine the existence of a genuine issue, the Court must engage in a rather sophisticated and careful inquiry if the Rule 56 procedure is to accomplish its objective— to pierce the allegations of the pleadings. See Wright & Miller, Federal Practice and Procedure, § 2725. The modern formulation is that the party opposing a summary judgment motion is to be given the benefit of all reasonable doubts and inferences in determining whether a genuine issue exists that justifies proceeding to trial.

■ Therefore, if the evidence presented on the motion is subject to conflicting interpretations, *Chenette v. Trustees of Iowa College,* 431 F.2d 49 (8th Cir. 1970), or reasonable men might differ as to its significance, summary judgment is improper.

### Defendant Ford Motor Credit Company

Defendant Ford argues that the nature of its asserted liability in the instant case is analogous to that which it would have if it had entrusted a repossessed vehicle to "The Missouri Pacific Railroad, and their engineer subsequently derailed his train, injuring various bystanders. In neither instance would liability exist."

Defendant Ford states that:

Plaintiffs make but one allegation of an agency relationship between Ford Credit and any of the other parties to this action. That is the statement in the Amended Complaint that the driver, Daniel Paul Newman, was 'the agent, servant, and employee of' Ford Credit.

Defendant Ford asserts that this contention of plaintiffs is without substance, since Ford Credit has at no time entered into a contract or business relationship of any sort with Daniel Paul Newman. Further, defendant Ford contends that neither Scheall Driveaway nor American Auto Shippers, Inc. was an agent, servant, or employee of Ford Credit.

In essence, defendant Ford argues that the relationship of Scheall to Ford Credit is that of an independent contractor. In support of this contention, defendant Ford offers the bill of lading covering the Ford vehicle in the present case. Defendant Ford also offers the deposition testimony of John Scheall to the effect that Scheall was engaged by Ford Credit as an exercise of distinct and independent employment in which Scheall did not agree to act subject to Ford Credit's control. According to the deposition testimony of Mr. Scheall, defendant Ford would have had no control over which driver Scheall assigned to bring the subject vehicle back to Colorado, nor would defendant Ford have known whether their vehicle would be used as the lead vehicle in the towing arrangement. (Depo., John Scheall, p. 103).

This deposition, Ford contends, shows that Scheall is the one who instructs his drivers how to drive, what speeds to use, what routes to follow, and the number of hours that should be driven each day. Further, Scheall alone trains the drivers. (Depo., John Scheall, pp. 62, 63, 65, 66, 108).

In response, plaintiffs assert that defendant Ford owned the truck being driven by defendant Daniel Newman and therefore had good sound business reasons to be concerned about the employment of Scheall Driveaway. (Depo., Smith, pp. 58–60, and Exh. 6, 10 of same); (Depo., Scheall, p. 48). Plaintiffs believe that the evidence shows

that the Ford-Scheall contract was oral, and that no written memoranda specified the independent contractor relationship (Depo., Bonnie Scheall, p. 24); (Depo., Smith, p. 48); (Depo., Carlson, p. 21).

Plaintiffs contend that the evidence shows that defendant Ford specified the delivery date, and that if the auto was not delivered by the specified date then Scheall was to be liable for the full amount owed on the vehicle (Depo., John Scheall, p. 13); (Depo., Smith, pp. 48, 51).

Plaintiffs argue that defendant Ford would expect to be advised and informed as to any questions which arose (Depo., John Scheall, p. 49); (Depo., Bonnie Scheall, p. 56); (Depo., Smith, pp. 111–114), and that defendant Ford had the absolute right to cancel the contract and vehicle movement (Depo., Smith, pp. 52–53); (Depo., Carlson, pp. 32–33).

According to plaintiffs, the deposition testimony of Mr. Smith negates any claim of independent contractor status:

Q Well, does it matter to Ford Motor Credit as to . . . whether these are certain safety measures that are taken to ensure that the vehicle is transported back safely and in good order and shape.

A No, sir.

Q It does not matter to Ford Motor Credit. . .

A How they moved it back? It did not matter to me at the time how they transported it back, no, sir.

Q But it mattered to you where they were going to transport it to you and by what time, didn't it?

A Yes, sir.

Q And it mattered to you that they had a valid license with the ICC, did it not?

A Yes.

Q And it mattered to you that they comply with all state and federal regulations, did it not?

A Yes, sir.

Q And it mattered to you that they at least provided licensed drivers, did it not?

A Yes, sir.

(Depo., Smith, pp. 63–65).

■ Thus, the employee/independent contractor distinction must be examined as a matter of governing substantive law. Federal courts, of course, follow the conflict of laws rules prevailing in the forum state. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Harwell v. Westchester Fire Insur. Co.*, 508 F.2d 1245 (8th Cir. 1974). This Court is of the opinion that the present Arkansas choice of law rule for actions *ex contractu* tends toward the application of the "most significant relationship" test, although former Arkansas law looked to the law of the place of performance. *Midland Valley Ry. Co. v. Moran Nut & Bolt Mfg. Co.*, 80 Ark. 399, 97 S.W. 679 (1906); *Peppers v. Pa. Door & Sash Co.*, 171 Ark. 521, 285 S.W. 5 (1926), but cf. *Edwin F. Armstrong & Co. v. Ben Pearson, Inc.*, 294 F.Supp. 163 (E.D. Ark.1967), aff'd 404 F.2d 610 (8th Cir. 1968). Cf. *Restatement (Second) of Conflict of Laws*, § 188; Leflar, *American Conflicts Law*, 3d Ed., § 149.

Nevertheless, under either the place of performance rule or the "most significant relationship" test, the Court is confident that the law of Colorado applies to determine the nature and effect of the Ford-Scheall relationship. The agreement was made wholly in Colorado and was to be performed by delivery in Colorado Springs, Colorado. However, upon review of the Colorado cases cited by defendant Ford, the Court is convinced that Colorado and Arkansas law are the same in this regard. *Christensen v. Hoover*, 608 P.2d 372 (Colo. App.1980); *Esposito v. Christopher*, 485 P.2d 510 (Colo.App.1971); Cf. *Jackson v. Petit Jean Elec. Coop.*, 268 Ark. 1076, 599 S.W.2d 402 (Ark.App.1980), aff'd 606 S.W.2d 66 (Ark.).

■ The general rule is that an independent contractor may be defined as one who carries on an independent employment in pursuance of a contract by which he has entire control of the work and the manner of its performance. The right to approve or reject the result of the work does not de-

stroy the independent contractor relationship. *Akins v. Oklahoma Gas & Electric Co.*, 433 F.Supp. 1345 (E.D.Ark.1977); *Jackson, supra;* See generally, 41 Am.Jur.2d 743, "Independent Contractors," § 5 *et seq.*; 56 C.J.S., "Master and Servant", 24, § 1 *et seq.*

▮ Among the factors to consider are: the time for which the workman is employed; the right to terminate the employment without liability; the method of payment, whether by time, job, price or other unit of measurement; furnishing, or the obligation to furnish, necessary tools and slight control of the manner of doing the work, where the nature of the work is such that little supervision is necessary. *Parker Stave Co. v. Hines*, 209 Ark. 438, 190 S.W.2d 620; *Purdy's Flower Shop v. Livingston*, 262 Ark. 575, 559 S.W.2d 24 (1977).

These are basically the factors enunciated by § 220 of the *Restatement of Agency*, Second Edition:

 (a) The extent of control which, by the agreement, the master may exercise over the details of the work;

 (b) Whether or not the one employed is engaged in a distinct occupation or business;

 (c) The kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

 (d) The skill required in the particular occupation;

 (e) Whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

 (f) the length of time for which the person is employed;

 (g) the method of payment, whether by the time or by the job;

 (h) whether or not the work is a part of the regular business of the employer;

 (i) whether or not the parties believe they are creating the relation of master and servant; and

 (j) whether the principal is or is not in business.

Considering these factors it is apparent that Ford Motor Credit Company has very little connection with Scheall Driveaway under the circumstances present here. Scheall Driveaway was contacted by defendant Ford (Depo., John Scheall, p. 48); Ford provided the directions to the pickup truck (*id.*, p. 49), and information as to its fitness (*id.*, p. 51). Scheall Driveaway makes all of the decisions as to towability and details of hook-up (*id.*, p. 52). The "employees" of Scheall, both casual and professional, regarded themselves as self-employed subcontractors (*id.*, p. 58). The drivers were paid by the job, per mile (*id.*, p. 61). Scheall advises the drivers as to routes and driving times (*id.*, p. 62). Scheall Driveaway intends that all of the drivers own their own tow equipment, although they sometimes "advance" the funds for the purchase. Defendant Ford had no knowledge or control of the driver assigned to the return. Ford did, however, have an "on-going" relationship with Scheall Driveaway (*id.* p. 109), but, as Mr. Scheall notes, "They don't care how its moved but they want the cheap rate."

▮ It is clear that both defendants Ford and Scheall Driveaway regarded Scheall Driveaway as an independent contractor. (Depo., Farrell Smith, p. 16). The overall time frame was established by defendant Ford, but all of the other arrangements were those of Scheall Driveaway. (*id.*, pp. 34, 42, 43). Thus, the Court has no hesitancy in finding that the "will of the worker" dominated the "means and method of the work, except as to result." *Hines, supra.* While the agent/independent contractor status is often a close question, here it is not. Scheall Driveaway, under the facts presented, was clearly an independent contractor with respect to Ford.

The Court finds that the evidence presented on the motion of Ford Motor Credit Company is not subject to conflicting interpretations. *Chenette, supra.* The evidence is not such that reasonable men might differ. This Court has not the slightest doubt "that no genuine issue of fact as to the status of Scheall Driveaway with respect to defendant Ford is presented."

Thus, the liability of defendant Ford cannot be predicated on this ground. *Little v. McGraw*, 250 Ark. 766, 467 S.W.2d 163 (1971), appeal after remand, *Riddell v. Little*, 253 Ark. 686, 488 S.W.2d 34.

Plaintiffs however, apparently recognizing this, assert that defendant Ford has failed to respond to the "negligence and negligent entrustment allegations contained in paragraph five of plaintiffs Amended Complaint."

█ It is undisputed that defendant Scheall Driveaway and Ford have an "ongoing business relationship." Clearly an employer who has had previous successful experience with an independent contractor in the performance of his work cannot be held liable on the theory that the contractor was negligently selected. *Western Arkansas Tel. Co. v. Cotton*, 259 Ark. 216, 532 S.W.2d 424 (1976). Only when an employer of an independent contractor goes beyond the limits of his contract and commits some affirmative act of negligence, as by some part in the performance of the work other than general supervision, can the employer be held liable. *Akins*, supra.

The matters presented on this motion do not support in any manner either of the propositions plaintiffs urge. As proof on these points, plaintiffs have been deafeningly silent.

█ Plaintiffs having advanced no other theory, the Court has no choice but to grant defendant Ford's motion for summary judgment, as there is not the slightest doubt that there is no genuine issue for trial. As defendant Ford commented, "the nature of its asserted liability in the instant case is analogous to that which it would have if it had entrusted a repossessed vehicle to the Missouri Pacific Railroad, and their engineer subsequently derailed his train, injuring various bystanders. In neither instances would liability exist."

The Court agrees.

### Defendant General Motors Acceptance Corporation

Defendant GMAC is situated similarly to defendant Ford. In the case of GMAC,

Scheall Driveaway of Arizona, per Bonnie Scheall was the party contacted for the transportation of the Pontiac automobile. This Court is convinced that under the *Klaxon* Rule, Arkansas would apply the law of Arizona to determine the relationship of Scheall Driveaway (Arizona) to GMAC. See *Midland Valley*, supra; *Peppers*, supra; *Armstrong & Co.*, supra; *Rest. 2d Conflict of Laws*, § 188; Leflar, § 149.

As GMAC notes, Arizona has a statutory definition of an independent contractor for certain purposes:

> A person engaged in work for another, and who while being so engaged is independent of the employer in the execution of the work and not subject to the rule or control of the person for whom the work is done, but is engaged only in the performance of a definite job or piece of work, and is subordinate to the employer only in effecting a result in accordance with the employers design, is an independent contractor...

Ariz.Rev.Stat.Ann. § 23–902C.

GMAC concedes, and the Court agrees, that under the laws of all the jurisdictions (Arizona, Colorado, and Arkansas) the test is the same. See *Consolidated Motors, Inc. v. Ketcham*, 49 Ariz. 295, 66 P.2d 246 (1937); *Ocean Accident & Guarantee Corporation, Ltd. v. Kennison*, 42 Ariz. 349, 26 P.2d 113; *Rest.2d Agency*, § 220 (1957); *Purdy's Flower Shop*, supra.

Mrs. Scheall described the duties of a casual driver thusly

> The availability of what is called a casual driver, someone seeking one-way transportation who is no way employed by our firm. They are simply a one-way contracted driver. We advertise in the newspapers locally, and we advertise in the yellow pages and in college papers, trying to not only get private business but to get drivers also.

(*Id.*, pp. 12–13).

Any "professional drivers" are handled by John Scheall, through the Colorado licenses.

Mr. Larry Carleson, of GMAC, contacted Mrs. Scheall to arrange for the transportation of the Pontiac. Mrs. Scheall described this contact as follows:

He called on the phone, simply said, 'I have a vehicle for you to bring back.' I took out an order form and said, 'Where is it?' He gave me the information where to deliver it in Phoenix; he gave me the year, make, model, color, license, serial number, registered owner, and he gave me his account number. And I asked him, 'Is it drivable?' And he said yes. And I said, 'Does it convert?' And he said no. I said, 'Do you want it back ASAP?' And he said yes. And that was basically the extent of our conversation. (*Id.*, pp. 24–25).

The agreement was basically that in "some fashion or another, the vehicle at some time would be delivered from Fort Smith out to the Arizona destination." (*Id.*, at 32).

Mrs. Scheall agreed that defendant Newman was a professional contract driver rather than an employee. (*Id.*, p. 35). Scheall Driveaway (Arizona) had no knowledge as to how the Pontiac was to be returned, nor who was to drive the vehicle.

GMAC didn't care how the vehicle was moved (*Id.*, p. 55) (Depo., Lawrence Carleson, pp. 18–19). As Mr. Carleson explained it:

What is done is we will phone—like in this case, to the best of my knowledge, I called Auto Driveaway, and I believe Nationwide, and also Scheall Driveaway, and advised them that I have a car in Fort Smith, Arkansas, that I needed to return to Phoenix; that it could be moved on a casual basis. There were no time limits that I was subject to to move it, and that's the type rate I wanted, was a casual rate.

And I took the rates on it, which Scheall Driveaway was the cheapest, at $325.00. (*Id.*, pp. 18–19).

As to whom was to transport the vehicle and whether it was to be towed, Mr. Carleson stated:

... We feel that if we have hired them and that they are capable, we have no control over how they are bringing it back, other than the fact they were going to bring it back casually when they had somebody in the neighborhood, in the area.

(*Id.*, p. 23).

As to the on-going nature of the Scheall Driveaway (Arizona)—GMAC business relationship, Mr. Carleson testified:

We have had several with them. We have had enough to know that they were a credible outfit, as far as moving for us.

(*Id.*, p. 27).

Thus, as with defendant Ford, all of the evidence submitted clearly defines the role of Scheall Driveaway (Arizona) to be that of any independent contractor with respect to defendant GMAC. GMAC exercised no control over the activities of Scheall Driveaway, and it does not appear that, pursuant to the understanding of the parties, GMAC had any right to control the details of the work. It is undisputed that Scheall Driveaway is engaged in a distinct occupation. The towing and movement of repossessed cars is as often as not performed without supervision as to details. A degree of skill or training is required in the particular occupation. The transporting company almost invariably supplies the instrumentalities and tools required. Payment is by the job. Both Scheall and GMAC regarded Scheall as an independent contractor.

Further, there is an absolute void of evidence that defendant GMAC committed any affirmative acts of negligence or was negligent in selecting Scheall Driveaway. The evidence is not subject to conflicting interpretations such that reasonable men might differ. The Court has not the slightest doubt that no genuine issue of fact is presented with respect to the liability of defendant GMAC. See *Little*, supra; *Cotton*, supra; *Akins*, supra; *Caylor*, supra; *Chenette*, supra; and *Freeman*, supra. Accordingly, defendant GMAC is entitled to judgment as a matter of law on plaintiffs' Amended Complaint.

**1342**

*Defendant Phil Long Ford, Inc.*

Although Plaintiffs now desire to dismiss Phil Long Ford, Inc. from this action, the evidence will be briefly summarized.

Plaintiffs, in their Amended Complaint alleged that the driver of the Ford pickup truck, defendant Newman, was "The agent, servant, and employee of" Phil Long Ford, Inc. (hereinafter "Phil Long").

Defendant Phil Long asserts that this contention is completely without substance, since "Phil Long has at no time entered into a contract or business relationship of any sort with defendant (Newman), or for that matter, defendants Scheall Driveaway or American Auto Shippers, Inc."

The relationship of Phil Long to the accident in question is non-existent. The only reference to defendant Phil Long in the deposition of defendant Newman was as follows:

Q. Well, do you have any reason to believe that it (the owner of the pickup truck) might have been Phil Long Ford?

A. No. The only thing that Phil Long Ford had was their name on the sheet that they were—no, that it was a—I don't know what connection they had with it or anything, that wasn't my area. All I was to do was to bring the car from one area to another.

(Depo., Daniel Newman, p. 64).

Mr. Scheall testified as to the role of defendant Phil Long as follows:

Q. ... Have you had any dealings in the past with Phil Long Ford outside of the fact that they've just been the destination point for vehicles?

A. I don't believe so.

. . . . .

Q. Has Phil Long Ford ever requested your services on the other end of the spectrum when they were—

A. I don't believe so. It's possible but I don't believe so.

Q. Is it to the best of your recollection the only time they've been involved is when they've been a destination point?

A. I believe so, yes.

Q. And to the best of your recollection, nobody from Phil Long Ford ever was contacted in regard to this specific truck and this movement of this truck?

A. To the best of my knowledge, no.

Q. Then if that's so, then they would have known nothing about it until it was actually being driven up on their lot by your independent contractor—

A. That's correct.

Q. —or professional driver?

(Depo., John Scheall, pp. 98–100).

Similarly, Bonnie Scheall testified:

Q. But it's your personal knowledge in this particular instance that Phil Long Ford was just a delivery point and not the customer?

A. That's correct.

(Depo., Bonnie Scheall, p. 88).

Defendant Phil Long stated in their response to plaintiffs' interrogatories (Jan. 29, 1982) that:

Phil Long Ford, Inc. has no open 'relationship' with any defendant except Ford Motor Credit Company from which it sells installment contracts under recourse arrangements.

(Defendant Phil Long's answers to plaintiffs' interrogatories, # 2).

After becoming aware of the above facts, plaintiffs consented to a dismissal against defendant, Phil Long Ford, Inc.

■ Accordingly, the Court finds that the motion of defendant Phil Long for summary judgment should be granted, and plaintiffs Amended Complaint is dismissed with prejudice with respect to said defendant, pursuant to Rule 56 rather than Rule 41, Fed.R.Civ.Pro.

*Defendants Newman, Scheall Driveaway, and American Auto Shippers*

Defendants Newman, Scheall Driveaway, American Auto Shippers and Phil Long Ford, Inc. were, as noted, dismissed from

this action because of lack of personal jurisdiction. Defendants Newman, Scheall Driveaway, and American Auto Shippers have not moved for summary judgment. Plaintiffs have moved for vacation of the November 18, 1981 dismissal order and these defendants have timely responded.

■ The facts adduced in a motion to dismiss for lack of personal jurisdiction must be viewed in the light most favorable to the party opposing the motion. However, there must be some evidence upon which a *prima facie* showing of jurisdiction may be found to exist. *School Dist. of Kansas City, Mo. v. State of Missouri*, 460 F.Supp. 421 (D.Mo.1978), appeal dismissed 592 F.2d 493 (8th Cir. 1978).

■ Clearly, this Court has personal jurisdiction over defendant Newman. It has now been alleged and supported that several of the acts and omissions of defendant Newman occurred within the State of Arkansas. Nonetheless, several of these acts and omissions do not appear to be causally related to the accident. It is at best unclear how defendant Newman's failure to use ordinary care in operating a vehicle in Arkansas contributed to the accident in Missouri. However, the allegations that defendant Newman failed to safely connect the tow bar and towed vehicle to the pickup truck, that he failed to properly inspect the tow assembly, and that he failed to connect safety chains, all within the State of Arkansas, clearly may be causally related to the accident. It is now undisputed that defendant Newman hooked up the two vehicles in the State of Arkansas. That these acts are alleged to have been negligently performed within the State of Arkansas, and that the accident is alleged to have proximately resulted from those acts, is sufficient to give the State of Arkansas personal jurisdiction over defendant Newman.

Arkansas' Long-Arm Statute, Ark.Stat. Ann. § 27–2502C(1)(c), is applicable. It provides:

 C. Personal jurisdiction based upon conduct.

 1. A Court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a (cause of action) (claim for relief) arising from the person's

 * * * * * *

 (c) causing tortious injury by an act or omission in this state;

As defendants note, "it would be necessary ... that the cause of action have arisen from the minimal contacts with the State of Arkansas." Defendants assert that "such is not the case here, since the cause of action necessarily arose from the defendants' activities in the State of Missouri." The Court disagrees. It is indeed eminently possible that the cause of action arose from defendant Newman's activities in the State of Arkansas.

Plaintiffs must show (1) that there are minimal contacts between the defendants and the State of Arkansas; (2) that there was an actual connection between the defendants' activities in the State of Arkansas and plaintiffs' injury in Missouri; and (3) that the Arkansas Long-Arm Statute is applicable to the facts. *Martin v. Kelley Elec. Co.*, 371 F.Supp. 1225 (E.D.Ark.1974).

The minimal contacts of defendant Newman and the State of Arkansas are now undisputed (see Newman deposition, generally). It is alleged and is quite possible that the contacts of defendant Newman with the State of Arkansas are connected with plaintiffs' injury in the State of Missouri. Further, Ark.Stat.Ann. § 27–2502C(1)(c) is clearly applicable. The tortious injury arguably did not occur in the State of Arkansas, however, some of the acts and omissions complained of certainly did. The Court feels that defendants' construction of section 27–2502C(1)(c) would return us to the *Pennoyer v. Neff*, (95 U.S. 714, 24 L.Ed. 565 (1878)), standards of yesteryear. See *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

Accordingly, this Court's Order of November 18, 1981, dismissing plaintiffs' complaint as to defendant Newman will be vacated and held for naught.

It is, of course, obvious that defendants Scheall Driveaway and American Auto Shippers personally committed no act or omission within the State of Arkansas. Thus, the basis of personal jurisdiction over them must rest on general agency principles, or *respondeat superior.* § 27–2502C(1)(c).

Considering all of the matters presented, including the depositions of John Scheall, Bonnie Scheall and Daniel Newman, it is not at all clear that defendant Newman was an independent contractor with regard to the other two defendants.

■ Scheall Driveaway has an agency relationship of some character with American Auto. (Depo., Bonnie Scheall, pp. 6–7; 10–11). Bonnie Scheall testified that the relationship of Scheall Driveaway (Arizona) to defendant American Auto Shippers was an agency contract, but American Auto Shippers doesn't "provide any of the supervision of the business itself." (Depo., Bonnie Scheall, pp. 6–7). The only control was as to the ICC regulations (*id.*, p. 7). However, whether this relationship is to be classified as that of agency or independent contractor, in the circumstances present here, is not beyond dispute. See *Robinson v. M.F.A. Mut. Ins. Co.*, 629 F.2d 497 (8th Cir. 1980). The Court is of the opinion that this is a matter best left to the finder of fact upon trial.

Similarly, the relationship of defendants Scheall Driveaway and Newman is not so unambiguous that this Court can determine it as a matter of law. Such a finding is necessary before the Court could rule that the Court lacks personal jurisdiction over these two defendants, in view of the new allegations of the Amended Complaint. Suffice it to say that plaintiffs have presented a *prima facie* showing of jurisdiction and accordingly, this Court's Order of November 18, 1981, dismissing the complaint of plaintiffs with respect to defendants American Auto Transporters and Scheall Driveaway will be vacated.

*Venue*

Defendants have asserted that venue is improperly laid in this Court, inasmuch as all of the plaintiffs reside in Arkansas except Theodore F. Wright, and the defendants are all situated in different judicial districts. See 28 U.S.C. § 1391(a). Naturally the claim arose in Missouri. Thus, under § 1391(a), venue would be proper only in Missouri.

■ However, plaintiff, Theodore F. Wright, has moved for dismissal of his claim against the defendants, pursuant to Rule 41(a)(2), Fed.R.Civ.Pro. The Court finds that the motion of Theodore F. Wright should be granted. Accordingly, as all remaining plaintiffs reside in this judicial district, venue is properly laid herein.

*Conclusion*

In accordance with the above, the summary judgment motions of defendants Phil Long Ford, Inc., GMAC, and Ford Motor Credit Company should be granted.

Plaintiffs motion for reconsideration and vacation of the Court's November 18, 1981, Order dismissing plaintiffs' claims with respect to defendants Daniel Newman, Scheall Driveaway and American Auto should be granted.

The motion of plaintiff, Theodore F. Wright, for dismissal without prejudice should be granted.

*Conclusions of Law*

1. A motion for summary judgment lies only when there is no genuine issue of material fact. Accordingly, the Court cannot try issues of fact on a Rule 56 motion but may only determine whether there are genuine issues to be tried. *Neff v. World Publishing Co.*, 349 F.2d 235 (8th Cir. 1965).

2. The summary judgment procedure must be used with a due regard for its purposes and should be cautiously invoked. *Traylor v. Black, Sivalls & Bryson, Inc.*, 189 F.2d 213 (8th Cir. 1951). However, when the requirements of the rule are met, the procedure should be viewed with favor and applied according to its terms. *Freeman v.*

*Continental Gin Co.,* 381 F.2d 459 (5th Cir. 1967).

3. The party opposing a summary judgment motion is to be given the benefit of all reasonable doubts and inferences in determining whether a genuine issue exists. *Chenette v. Trustees of Iowa College,* 431 F.2d 49 (8th Cir. 1970).

4. Federal courts must follow the conflict of laws rules prevailing in the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Harwell v. Westchester Fire Insur. Co.,* 508 F.2d 1245 (8th Cir. 1974).

5. Under either choice of law rule, the "place of performance" rule or the "most significant relationship" rule, Colorado law governs in determining the nature and effect of the relationship between defendants Scheall Driveaway and Ford.

6. The law of the State of Colorado and the law of the State of Arkansas with regard to the existence and effect of an independent contractor relationship are substantially the same. *Christensen v. Hoover,* 43 Colo.App. 501, 608 P.2d 372 (1980); *Esposito v. Christopher,* 485 P.2d 510 (Colo.App. 1971); *Jackson v. Petit Jean Elec. Coop.,* 268 Ark. 1076, 599 S.W.2d 402 (Ark.App. 1980), aff'd 606 S.W.2d 66 (Ark.)

7. An independent contractor is one who carries on an independent employment in pursuance of a contract by which he has entire control of the work and the manner of its performance. The right to approve or reject the result of the work does not destroy the independent contractor relationship. *Akins v. Oklahoma Gas & Electric Co.,* 433 F.Supp. 1345 (E.D.Ark.1977); 41 Am.Jur.2d 743 "Independent Contractors," § 5 *et seq.*; 56 C.J.S., "Master and Servant," 24, § 1 *et seq.*

8. Among the factors to consider are: the time for which the workman is employed; the right to terminate the employment without liability; the method of payment, whether by time, job, price or other unit of measurement; furnishing, or the obligation to furnish, necessary tools and slight control of the manner of doing the work, where the nature of the work is such that little supervision is necessary; whether or not the one employed is engaged in a distinct occupation or business; the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; whether or not the work is a part of the regular business of the employer; and the belief of the parties. *Parker Stave Co. v. Hines,* 209 Ark. 438, 190 S.W.2d 620; *Purdy's Flower Shop v. Livingston,* 262 Ark. 575, 559 S.W.2d 24 (1977); Rest. 2d, Agency, § 220.

9. There is not the "slightest doubt" that there is not a genuine issue of material fact as to the status of Scheall Driveaway with respect to Ford. Thus, the liability of defendant Ford cannot be predicated on the ground of vicarious liability. *Little v. McGraw,* 250 Ark. 766, 467 S.W.2d 163 (1971).

10. An employer who has had previous successful experience with an independent contractor without incident of any kind cannot be held liable on the theory that the contractor was negligently selected. *Western Arkansas Tel. Co. v. Cotton,* 259 Ark. 216, 532 S.W.2d 424 (1976). Only when an employer of an independent contractor goes beyond the limits of his contract and commits some affirmative act of negligence, as by some part in the performance of the work other than general supervision, can the employer be held liable. *Akins,* supra.

11. Plaintiffs have failed to demonstrate the existence of a genuine issue of material fact as to the liability of defendant Ford, and defendant Ford is entitled to judgment as a matter of law.

12. Under either choice of law rule, the "place of performance" rule or the "most significant relationship" rule, Arizona law governs in determining the nature and effect of the relationship between defendants Scheall Driveaway and Ford. However, the law of the State of Arizona and the law of the State of Arkansas, with regard to the existence and effect of an independent contractor relationship are substantially the same. Ariz.Rev.Stat.Ann., § 23–902; *Con-*

*solidated Motors, Inc. v. Ketcham*, 49 Ariz. 295, 66 P.2d 246 (1937); *Purdy's Flower Shop*, supra.

13. There is not the "slightest doubt" that there is not a genuine issue of material fact as to the status of Scheall Driveaway with respect to GMAC. Thus, the liability of defendant GMAC cannot be predicated on the ground of vicarious liability. *Little*, supra. Nor is there any evidence of negligent selection or other affirmative acts of negligence on the part of GMAC. *Akins*, supra.

14. Plaintiffs have failed to demonstrate the existence of a genuine issue of material fact as to the liability of defendant GMAC, and defendant GMAC is entitled to judgment as a matter of law.

15. All parties agree that there is no genuine issue of material fact presented as to the purported liability of defendant Phil Long Ford, Inc., and said defendant is entitled to judgment as a matter of law.

16. The facts adduced in a motion to dismiss for lack of personal jurisdiction must be viewed in the light most favorable to the party opposing the motion. However, there must be some evidence upon which a *prima facie* showing of jurisdiction may be found to exist. *School Dist. of Kansas City, Mo. v. State of Missouri*, 460 F.Supp. 421 (D.Mo.1978).

17. There are minimal contacts between defendant Newman and the State of Arkansas; there was some *prima facie* connection between the defendant's activities in the State of Arkansas and plaintiffs' injuries in the State of Missouri; and the Arkansas "long-arm" statute, Ark.Stat.Ann. § 27–2502C(1)(c) is applicable to the present facts. Accordingly, this Court has *in personam* jurisdiction over defendant Newman. *Martin*, supra; *World-Wide Volkswagen*, supra.

18. Plaintiffs have established a *prima facie* case that defendant Newman was an employee, agent, or servant of defendant Scheall Driveaway at the time defendant Newman performed certain allegedly negligent acts in the State of Arkansas. Plain-

tiffs have demonstrated a *prima facie* case that defendant Scheall Driveaway was an agent of defendant American Auto Shippers, Inc. at the time certain allegedly negligent acts were committed by defendant Newman in the State of Arkansas.

19. Thus, this Court may properly exercise *in personam* jurisdiction over defendants Scheall Driveaway and American Auto Transporters.

20. The Court's Order of November 18, 1981, dismissing the claims of plaintiffs against these defendants for lack of personal jurisdiction should be vacated.

A separate judgment in accord with this memorandum opinion will be entered.